## FRIEDMAN *v.* GOODMAN.

1. The general grounds of the motion for a new trial were without merit.
2. Failure of the trial judge to give a particular instruction to the jury, which the losing party, in his motion for a new trial, contends should have been given, is not cause for a new trial, even if such instruction would have been abstractly correct, if neither the pleadings nor the evidence in the case required it to be submitted to the jury.
3. The verdict in favor of the plaintiff was not excessive in amount.

Argued November 15,—Decided December 22, 1905.

Action for damages.    Before Judge Cann.    Chatham superior court.    August 7, 1905.

Mrs. Bertha Goodman brought an action for damages against Sam. Friedman, alleging that while she "was proceeding quietly along Margaret Street," in the city of Savannah, "on her way home," she living on one side of this street and the defendant upon the other, and "as she got to a point on said street opposite his house, a vicious dog," of which the defendant was the owner or keeper, "sprang upon her and bit her severely, throwing her to the ground and fastening his teeth in her right breast, inflicting dangerous, severe, and painful wounds," and that she was also severely bitten in other places upon her body.    She further alleged that the defendant knew of the viciousness of the animal, but failed and refused "to keep his dog shut up."    The defendant, in his answer, admitted that he kept the dog in question and that it had bitten the plaintiff; denied that he knew that it was vicious, and alleged that it was not, but was gentle and kind, and that his own little children and those of his neighbors were accustomed to play with it, without being harmed or injured by the animal in any way.    He further alleged that "the members of plaintiff's family would irritate and tease the dog and throw rocks and other missiles at him; that upon one occasion a member of the family, with their dogs, was passing the house, and the dogs becoming engaged in a fight, she took a stone or brick and struck this dog, injuring him so seriously that he was unable to walk for some time; that this treatment caused the dog to have an intense aversion to the members of the family, and that one day one of the girls was passing and he caught her cape and tore it; that the dog was not vicious, however, because when this happened one of the other children present caught the dog around the neck and held him so that he could not do her any harm."    He further alleged that when he "heard of this occurrence he took the dog out into the country, so that it would not be possible for these people to come in contact with him, but on the day that the plaintiff was bitten one of the hands had loosed the dog for the purpose of helping him to catch a sheep, .  .   and the dog, as was perfectly natural, ran away and came back home; and "when near defendant's home he met the plaintiff, and evidently seeking to avenge a wrong which he considered had been done him, he bit her."    On the trial the plaintiff showed that the attack of the dog upon her

was wholly unprovoked, and the character and extent of her injuries. There was evidence, pro and con, as to the dog's previous viciousness. The evidence for the plaintiff showed that the animal, prior to its attack upon her, had bitten other people, among them her niece, Miss Rachel Friedman, who testified that, without provocation on her part, the dog had bitten her, torn her cape, and torn the clothes off her; that she carried these clothes to the defendant, showed them to him, and told him about the occurrence, and to keep the dog in the house. The defendant testified, that Miss Rachel Friedman had come to him and told him that the dog jumped on her somewhere on the street, and if it had not been for Milly Davis he would have bitten her, that the dog tore her cape up; and that she showed him a cape and waist. He also testified that he took the dog "out to the country, and he was tied, and one of the colored men out there unloosed him to catch sheep, and the dog came back to the city on the day this thing happened to Mrs. Goodman." The jury found a verdict for four hundred dollars in favor of the plaintiff. The defendant made a motion for a new trial, which was overruled, and he excepted.

*W. B. Stubbs* and *Osborne & Lawrence,* for plaintiff in error
*Twiggs & Oliver,* contra.

FISH, C. J. (After stating the facts.) 1, 2. There was no merit in the general grounds of the motion for a new trial. By an amendment to the motion, error was alleged as follows: "1st. Because the court, though not requested, failed to submit to the jury the question as to whether the defendant was negligent, and failed to charge the jury that though the defendant might have known that the animal was vicious, still, if it escaped and was at large without fault upon his part, the defendant would not be liable. 2nd. Because the court charged the jury as follows: 'If she [the plaintiff] does show that the dog was vicious, and the defendant knew it was vicious and that the injury was without fault upon her part, she would be entitled to recover.'" The assignment of error upon this charge was that "it authorized plaintiff to recover although the defendant used ordinary care and diligence to keep the dog from getting at large." Whether, in this State, the gist of an action against the owner or keeper of a vicious domestic animal for injuries inflicted by such animal is the mere keeping of the animal

with knowledge of its vicious propensities, as is held in some jurisdictions, or is the negligent keeping of the animal after such knowledge, as is elsewhere held, we need not determine in this case. For, in the view which we take of the case, it is immaterial whether the defendant would or would not be liable if he exercised due and proper care in the keeping and management of the dog after notice of its vicious propensity. The Civil Code, § 3821, declares: "A person who owns or keep a vicious animal of any kind, and by careless management of the same, or by allowing the same to go at liberty, another without fault on his part is injured thereby, such owner or keeper shall be liable in damages for such injury." It has been held that under this section it is still necessary, as at common law, to show not only that the animal was vicious or dangerous, but also that the owner or keeper knew of this fact. *Harvey* v. *Buchanan,* 121 *Ga.* 384, and cit. It would seem, from the language of the section, that liability for injuries inflicted by such an animal would result from negligence in the manner of keeping or confining the animal, or the care exercised in confining it, after notice of its dangerous or vicious propensity, and not from the mere keeping of the animal after such notice; but, as above intimated, it is unnecessary to determine this question. It is clear that if the defendant, after knowledge of the viciousness of the dog, allowed it to go at liberty, he became responsible to any one whom the dog, while at liberty, might attack and injure. Therefore, if the question whether the defendant allowed the dog to go at liberty on the occasion when the plaintiff was injured by the animal was really not involved in the case as made by the pleading and the evidence, it matters not that the judge failed to instruct the jury that the defendant would not be liable if he "used ordinary care and diligence to keep the dog from getting at large," even if this be sound law. Both the answer and the testimony of the defendant amounted to an admission that, after being informed of the attack which the dog, while at large upon the streets of Savannah, had made upon a member of the plaintiff's family, he had not exercised such care and diligence to prevent the animal from going at liberty, but, on the contrary, had allowed it to go at liberty. He knew that the dog had "an intense aversion to the members of the [plaintiff's] family" and had already made a violent attack upon one of them, and yet, according to both his answer and his own testimony, he merely took

the dog from its home in the city out into the country and left it, and the place where he left it was sufficiently near to the city for the dog to reappear at its old haunts on the very day that it was turned loose in the country. There is not the slightest intimation in his answer or his testimony that he gave any instructions whatever as to the care to be exercised in reference to the animal to those in whose keeping he left it. He admitted in his answer that, on the day that the plaintiff was injured, the dog was turned loose by one of the hands on the place where he had left it, for the purpose of catching a sheep, and that it *"was perfectly natural,"* when this was done, for the animal to run away and come back to its home in the city. If the "perfectly natural" consequence of turning the dog loose in the country, to chase a sheep, was that it ran away and came back to its home in the city, then it necessarily follows that to thus allow the animal its freedom was to allow it to go at liberty, not only in the country but upon the street in the city of Savannah where it met and bit the plaintiff. And as the defendant was responsible for the want of care, or negligence, of those in whose keeping he had left the dog, when one of them allowed it to go at liberty, the defendant, in the eye of the law, allowed it to do so. The dog was at liberty, upon a public street in the city, when it attacked and injured the plaintiff. The defendant admitted this and that he was the keeper of the animal. It was shown that, before this, knowledge of the dog's dangerous and vicious propensity was brought home to the defendant. It would seem that these facts made out a prima facie case of negligence on the part of the defendant. But, admitting that they did not, the defendant undertook to show the kind and degree of care which he exercised to restrain the animal of its liberty, after notice of the attack which it had made on a member of the plaintiff's family, and, in so doing, he not only wholly failed to show any facts from which the jury would be authorized to find that he was not negligent, but, in effect, admitted that when the plaintiff was bitten the dog was at large upon the streets of Savannah because he had, through those for whose negligence he was responsible, allowed it to go at liberty. For these reasons, if for no others, there was no merit in the exceptions to the charge of the court.

3. Another ground of the motion for a new trial was that the verdict was excessive in amount. The physician who attended and

treated the plaintiff after she was bitten by the dog testified, that he found her very much excited; "that she had a very deep wound in her right breast, and on the abdomen, going down, there were long scratches—these didn't seem to be teeth marks so much,—it seemed as if something else had pulled down on there—that extending, probably, from her breast down here (indicating)—the marks would skip a little and then appear lower down again. The wound in her breast was possibly one fourth or one half inch deep. . . I treated her off and on, probably for six or seven days; sometimes in the early part I called twice a day, than once a day and then once every two days. Probably I paid her seven or eight visits, or something like that. I think it healed up in about ten days." The plaintiff herself testified that the dog jumped on her, bit her, and threw her down and held her; that a man came over and knocked the dog off; that her "bosom was full of blood;" that she was bitten in three places, once on the breast and twice on the stomach; and that she did nothing to provoke the animal. We think a verdict in her favor for four hundred dollars was, as to amount, fully authorized by this evidence.

*Judgment affirmed. All the Justices concur.*