297 Ga. 364
FINAL COPY

S14G1173. ESHLEMAN v. KEY.

BLACKWELL, Justice.

Lynn Eshleman is employed with the DeKalb County Police Department as a law enforcement officer and dog handler, and in connection with her employment, she is responsible for the care and maintenance of Andor, a police dog trained to assist in the apprehension of persons suspected of criminal activity. When Eshleman is not working, she keeps Andor at her Walton County home, just down the street from the home of Benjamin Key. On November 6, 2011, Eshleman put Andor into a portable kennel outside her home, but she evidently failed to secure the kennel door. As a result, Andor escaped into the neighborhood, where the dog encountered Key's son, then eleven years of age. According to Key, the dog attacked his son, causing the child to sustain serious injuries to his arm. Key sued Eshleman, alleging that she failed to restrain Andor, and Eshleman moved for summary judgment on the ground of official immunity. The trial court denied her motion, Eshleman appealed, and the Court of Appeals affirmed the denial of summary judgment. See Eshleman v. Key, 326

Ga. App. 883 (755 SE2d 926) (2014). We issued a writ of certiorari to review the decision of the Court of Appeals, and we now reverse.

1. As a general rule, a county law enforcement officer enjoys official immunity from a lawsuit alleging that she is personally liable in tort for her performance of official functions.[1] See Roper v. Greenway, 294 Ga. 112, 113 (751 SE2d 351) (2013). See also Phillips v. Hanse, 281 Ga. 133, 133 (1) (637 SE2d 11) (2006); Cameron v. Lang, 274 Ga. 122, 124 (2) (549 SE2d 341) (2001); Gilbert v. Richardson, 264 Ga. 744, 752-753 (6) (452 SE2d 476) (1994). There are, however, two important exceptions to this rule. First, an officer has no immunity to the extent that she acted with malice or an intent to injure. See Cameron, 274 Ga. at 124 (2). Second, an officer has no immunity for negligence in the performance of a ministerial function. See Roper, 294 Ga. at 113.

As a DeKalb County Police officer and dog handler, Eshleman is responsible for the care and maintenance of Andor at all times, even when she is not working. For this reason, the allegation that Eshleman failed to secure the

_____

[1] Although official immunity has roots in the American common law, see Gilbert v. Richardson, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994), the doctrine is now enshrined in our Constitution. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). We have held that the constitutional rule of official immunity applies to county law enforcement officers, among other public officials. Gilbert, 264 Ga. at 753 (6).

2

dog outside her home concerns her performance of an official function, and Eshleman presumptively is entitled to official immunity. Key does not contend that Eshleman acted with malice or an intent to injure anyone, and so, the first exception to the general rule of immunity does not apply. Unless the second exception applies, the general rule holds, and Eshleman is entitled to official immunity.

To define the scope of the second exception, this Court has distinguished between the ministerial functions of an officer, on the one hand, and official functions that involve an element of discretion, on the other:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

Murphy v. Bajjani, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007) (citations omitted). See also Austin v. Clark, 294 Ga. 773, 774 (755 SE2d 796) (2014); McDowell v. Smith, 285 Ga. 592, 593 (678 SE2d 922) (2009). When an officer is performing an official function with respect to which she owes no duty of care whatsoever — when the officer is equally permitted to choose to do anything or

3

nothing at all — the officer necessarily is engaged in the performance of a discretionary function, not a ministerial one. But even when an officer clearly owes a duty of care and is absolutely required to do *something*, unless she has been commanded — by law or by the policy or directive of her employer — to do *a particular thing*, she still is engaged in the performance of a discretionary function. See Roper, 294 Ga. at 114-116. In Cameron, for instance, we held that a law enforcement officer engaged in a high-speed pursuit was performing a discretionary function for which he was entitled to official immunity, notwithstanding that the officer owed a generalized duty to drive with due regard for the safety of the public. 274 Ga. at 125-126 (2). See also Murphy, 282 Ga. at 199-200 (1) (although statute absolutely "require[d] that action be taken and set[ ] forth parameters for the action to be taken," the statute required school officials to exercise "personal deliberation and judgment," and it did not, therefore, impose a ministerial duty); Harry v. Glynn County, 269 Ga. 503, 505 (2) (501 SE2d 196) (1998) (paramedic owed duty of care to patient, but paramedic nevertheless entitled to official immunity). As we have explained, "[a law, policy, or] instruction[ ] adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the

4

execution of a relatively simple, specific duty." Roper, 294 Ga. at 115 (citation and punctuation omitted).

In this case, there is no evidence that DeKalb County gave specific direction to Eshleman — by policy or otherwise — about the extent to which she was to keep Andor restrained when she was not working or the particular way in which she was to do so. Key contends, however, that the law imposed an absolute and sufficiently specific duty upon Eshleman to keep the dog under restraint, and in support of this contention, he points to OCGA § 51-2-7 and a Walton County ordinance. We now consider the duty imposed by each of those laws, beginning with the statute.

2. In pertinent part, OCGA § 51-2-7 provides:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. . . .

As our Court of Appeals has explained, the statute recognizes that the keeper of an animal known to have vicious or dangerous propensities owes a duty of care with respect to the management and restraint of the animal for the protection of those who may come into contact with it. See Cowan v. Carillo, 331 Ga. App.

5

387, 389 (1) (771 SE2d 86) (2015). For our present purposes, we will assume that Andor — by virtue of having been trained to assist law enforcement in the apprehension of criminal suspects — is a "vicious or dangerous animal," as that term is used in the statute.[2] And we will assume that Eshleman, having been assigned responsibility for the care and maintenance of Andor, knew the dog to be a "vicious or dangerous animal." Assuming these things, it follows that Eshleman owed a duty to manage and restrain Andor so as to prevent the dog from injuring others.

But as we noted earlier, the important question in the context of official immunity is not merely whether an officer owed a duty of care, but rather, whether the official owed a duty that is particularized and certain enough to render her duty a ministerial one. We suppose that an absolute duty to restrain an animal at all costs — a duty that implies strict liability — might amount to a ministerial duty when owed by a public officer. We already have held, on the other hand, that a generalized duty to merely exercise reasonable care may not

---

[2] But see OCGA § 4-8-21 (b) (at least for the purposes of the Responsible Dog Ownership Law, OCGA § 4-8-20 et seq., "[n]o dog shall be classified as a dangerous dog or vicious dog for actions that occur while the dog is being used by a law enforcement or military officer to carry out the law enforcement or military officer's official duties").

be specific enough to amount to a ministerial duty. See <u>Cameron</u>, 274 Ga. at 125-126 (2). Which sort of duty is recognized by OCGA § 51-2-7?

The statute speaks in terms of liability, and rather than directly stating the relevant duty of care, it identifies instead the circumstances that mark a breach of that duty: "careless management" and "allowing the animal to go at liberty." "Careless management" quite clearly implies only a generalized duty of ordinary care. See <u>Cowan</u>, 331 Ga. App. at 391-392 (1) (b). See also <u>Southern R. Co. v. Horine</u>, 121 Ga. 386, 386 (2) (49 SE 285) (1904) ("The words 'carelessly' and 'negligently' are synonymous."); <u>Ferrell v. Haas</u>, 136 Ga. App. 274, 276 (220 SE2d 771) (1975) (same). As for the statutory reference to "allowing the animal to go at liberty," it too implies only a generalized duty to exercise ordinary care to keep a vicious or dangerous animal restrained so as to prevent injury to others. The statute always has been understood as merely a recognition of the duty at common law with respect to vicious and dangerous animals. <u>Harvey v. Buchanan</u>, 121 Ga. 384, 385 (49 SE 281) (1904). And more than a hundred years ago, this Court addressed that duty in the context of a case involving allegedly vicious or dangerous animals that ran loose, holding that it is a duty to exercise ordinary care:

7

> Relatively to a person on a public highway, who is injured by vicious or dangerous horses which may have been hired to a customer by a liveryman, if such injury arises from the exercise of the vicious propensity, the owner will be held liable therefor, if he hired such horses, knowing them to have vicious or dangerous propensities, or having reasonable grounds for so knowing, and was *wanting in ordinary care for the protection of the public against injury from the exercise of such propensities*.

Logan v. Hope, 139 Ga. 589, 589 (2) (77 SE 809) (1913) (emphasis supplied).[3]

See also Taft v. Taft, 209 Ga. App. 499, 500-501 (2) (433 SE2d 667) (1993) (speaking of negligence in the context of liability under OCGA § 51-2-7 for failure to adequately restrain a 600-pound bull).

Moreover, the statutory reference to "allowing the animal to go at liberty" is comparable to language in other "running at large" statutes, which generally have been understood by the courts and commentators to permit liability only upon a showing of negligence. See West v. West, 299 Ga. App. 643, 645 (683

---

[3] To the extent that OCGA § 51-2-7 may have been misunderstood for a time as reflecting a rule of strict liability, the statute was amended in 1985 to change "shall be liable" to "may be liable." That amendment, the Court of Appeals has concluded, was intended to make clear that the standard for liability is negligence, not strict liability. Hamilton v. Walker, 235 Ga. App. 635, 636-637 (510 SE2d 120) (1999). Logan demonstrates, however, that the standard for liability always has been negligence, and if the statute ever was understood to impose strict liability, it was misunderstood. See Andrist, "Is There (and Should There Be) any 'Bite' Left in Georgia's 'First Bite' Rule?," 34 Ga. L. Rev. 1343, 1349, n. 55 (2000) (explaining why "Georgia law arguably never applied strict liability").

SE2d 153) (2009) (construing OCGA § 4-3-3, which provides that no owner of livestock "shall permit livestock to run at large on or to stray upon the public roads of this state"). See also James L. Rigelhaupt, Jr., "Liability of Owner of Animal for Damage to Motor Vehicle or Injury to Person Riding Therein Resulting from Collision with Domestic Animal at Large in Street or Highway," 29 ALR4th 431 § 4 [a] (1984); M. O. Regensteiner, "Owner's Liability, under Legislation Forbidding Domestic Animals to Run at Large on Highways, As Dependent on Negligence," 34 ALR2d 1285 §§ 2, 3 [a]-[b] (1954). Indeed, the general rule with respect to statutes that forbid an owner to "permit" or "allow" his animals to run at large is that the statutes are not violated in the absence of, at the least, some negligence. See 34 ALR2d 1285 § 4. See also Lollar v. Poe, 622 So2d 902, 905 (Ala. 1993); 4 AmJur2d Animals § 94. The reason for this rule is that "[t]he verbs 'permit' and 'allow' are commonly understood to imply some volition on the part of the actor." Alvarez v. Ketchikan Gateway Borough, 91 P3d 289, 292 (Alaska App. 2004). For these reasons, we understand OCGA § 51-2-7 to merely recognize a duty to exercise ordinary care in the management and restraint of a vicious or dangerous animal for the protection of the public.

9

Ordinary care to restrain an animal requires the taking of reasonable measures to keep the animal restrained. And that, in turn, necessarily requires personal deliberation and judgment. How much of a danger does a particular animal present? Is a fence enough to hold it? How high of a fence? If a tether is required, is the rope or chain strong enough? What about visitors who may enter the premises — how are they to be protected? And when the animal is transported, what sort of portable kennel is sufficient to hold it? The law requires the keeper of a vicious or dangerous animal to ask these sorts of questions, but neither the statute nor the common law supplies simple answers. What should be done always will depend to some extent on the circumstances. And that means that the duty cannot — when applied to a public officer — be characterized properly as a ministerial one. See Grammens v. Dollar, 287 Ga. 618, 621 (697 SE2d 775) (2010) ("Where the [law or] policy requires the public official to exercise discretion in the implementation of the [law or] policy, the [law or] policy does not require the performance of a ministerial duty." (Citations omitted)). See also Roper, 294 Ga. at 115; Murphy, 282 Ga. at 199 (1).

10

3. Key also contends that Eshleman had a ministerial duty to restrain Andor under Walton County Code §§ 10-3 and 10-4,[4] but these ordinance provisions are no more particularized than OCGA § 51-2-7.[5] Section 10-3 only sets forth a generalized duty not to permit a domesticated animal to be at large. Section 10-4 is also applicable here, imposing a duty on every animal custodian to ensure that it is "kept under *proper* restraint and that *reasonable care and precautions* are taken to prevent the animal from leaving, while unattended, the real property limits of its . . . custodian." (Emphasis supplied.) Like OCGA §

---

[4] Eshleman also relies on Walton County Code § 10-5, but that section of the ordinance only requires the custodian of an animal to keep it under restraint and control when the animal is off the premises of the custodian. Because Andor escaped a portable kennel located on the premises of Eshleman's home, Section 10-5 has no application. We note that, even if Section 10-5 applied, although it identifies a number of circumstances in which an animal will be deemed under restraint and control — when it is "within a vehicle," "within a secured enclosure," "securely restrained by a leash or other method held by a competent person," or "under immediate voice command" — Section 10-5 leaves it to the custodian to select the particular method of restraint and control that is appropriate for the circumstances. That sort of discretion requires personal deliberation and judgment, and it would not amount in any event to a ministerial duty.

[5] The Court of Appeals rejected this contention out of hand because it found no original or properly certified copies of the county ordinances in the record. Eshleman, 326 Ga. App. at 887 (2), n. 16. At oral argument, however, Eshleman conceded that the Court of Appeals was mistaken in this regard. Indeed, copies that appear to be properly certified by the Walton County Clerk are in the record. There is no seal, but the applicable statute, OCGA § 24-9-920 (formerly OCGA § 24-7-20), merely requires a certificate or attestation, not a seal. See McIntyre v. Balkcom, 229 Ga. 81 (2) (189 SE2d 445) (1972). We will, therefore, address the merits of this contention.

11

51-2-7, Section 10-4 leaves the choice of reasonable measures to the discretion of the custodian, and any duty that Eshleman owed under Section 10-4 was just as discretionary as the duty that she owed under state law.

4. The duties that Eshleman was alleged to have violated were not ministerial ones because, although the duties reflected in OCGA § 51-2-7 and the county ordinance may be definite, they do not require merely the carrying out of a specified task. See Roper, 294 Ga. at 114-115. They require, instead, an exercise of personal deliberation and judgment about what is reasonable in the particular circumstances presented. See Murphy, 282 Ga. at 199-200 (1). The trial court, therefore, erred when it denied the motion for summary judgment on the ground of official immunity, and the decision of the Court of Appeals affirming that denial must be reversed.

Judgment reversed. All the Justices concur.

Decided June 29, 2015.

Certiorari to the Court of Appeals of Georgia — 326 Ga. App. 883.

Hall, Booth, Smith, James H. Fisher II, Denise W. Spitalnick; Laura K. Johnson, Kendric E. Smith, for appellant.

<u>Law Offices of Andrew W. Jones, Andrew W. Jones, M. Chase Swanson</u>,

for appellee.