McFADDEN, Judge.
Pamela Green appeals from the grant of summary judgment to Robert Wilson in this personal injury action against him individually and in his capacity as executor of the estate of his wife, Audie Wilson. In the action, Green alleged that she was injured while trying to get away from the Wilsons’ dog. Because there is evidence that Mrs. Wilson knew that the dog had the propensity to do the type of act that *632 caused Green’s injury, summary judgment is not appropriate. Accordingly, we reverse.
Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court’s grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the nonmovant.
Stennette v. Miller, 316 Ga. App. 425, 426 (729 SE2d 559) (2012) (citation omitted).
So viewed, the evidence showed that at the time of the incident Green worked for a housecleaning company that provided cleaning services to the Wilsons, who owned a border collie named Nani. Normally, after arriving at the Wilsons’ house, the housecleaners would wait outside until Mrs. Wilson locked Nani in a room. When the housecleaners were ready to clean that room, Mrs. Wilson would move Nani, sometimes physically dragging the dog to another room as the dog lunged, barked, and growled at the housecleaners. After securing Nani in the other room, Mrs. Wilson would tell the house-cleaners that they were “safe.” Although Green testified that she did not see Nani behave viciously or aggressively, the other housecleaners testified that they were afraid of Nani.
On October 11, 2011, Green and a co-worker arrived at the Wilsons’ house in a cleaning company van. Unlike other times, on this occasion Nani was outside the house in a fenced enclosure, barking. Green got out of the van. Suddenly, Green’s co-worker saw Nani leap over the fence and run toward Green. The co-worker yelled a warning to Green, who quickly jumped inside the van and shut the door as Nani barked, growled, and jumped against the van door. In Green’s effort to escape the dog, she struck her arm against the van, sustaining an injury that required surgery.
Citing “principles of common law negligence,” Green has argued that the Wilsons were liable because they knew of Nani’s propensity to “chase people, or to act aggressively toward people so as to frighten them.” (She expressly does not seek to recover under OCGA § 51-2-7, which provides for liability of the owner or keeper of a vicious or dangerous animal for injuries caused by that animal.) Our law as to negligence claims against dog owners provides that
a dog owner will be liable for damages only if the owner has knowledge that the dog has the propensity to do the particular act . . . which caused injury to the complaining party. *633 Under this test, the plaintiff must show whether the dog had the propensity to do the act that caused the injury and, if so, whether the owner had knowledge of that propensity.
Wade v. American Nat. Ins. Co., 246 Ga. App. 458, 459 (1) (540 SE2d 671) (2000) (citations and punctuation omitted) (addressing claims made under both the dangerous animal liability statute, OCGA § 51-2-7, and the premises liability statute, OCGA § 51-3-1). See generally Stennette, 316 Ga. App. 425 (analyzing several theories through which plaintiff sought to impose liability upon defendant for dog attack).
The trial court granted summary judgment to Wilson on the ground that there was no evidence that Nani had the propensity to do the particular act that caused Green’s injury because Nani had never before chased anyone, inside or outside the house. The trial court correctly noted that “a dog’s aggressive or menacing behavior alone is not sufficient to place its owner on notice of a propensity’ to do a particular act. Wade, 246 Ga. App. at 460 (1) (citation omitted). Nevertheless, the trial court considered the evidence in this case too narrowly. While a dog owner must
have reason to know of [the animal’s] propensity to do harm of the type which it inflicts [,] this does not mean an incident involving the exact same conduct and the exact same injury must actually occur before the owner’s knowledge may be inferred, as long as there is an incident or incidents which would put a prudent man on notice to anticipate the event which occurred.
Torrance v. Brennan, 209 Ga. App. 65, 67-68 (2) (432 SE2d 658) (1993) (citations and punctuation omitted).
Green presented more than simply evidence of Nani’s aggressive or menacing behavior. She presented evidence that, on at least one occasion, a barking and growling Nani lunged at the housecleaners as Mrs. Wilson held the dog back. We find no meaningful distinction between this behavior and what happened on the day Green was injured. In both instances the dog’s acts could be construed as attempts to move toward a person in an aggressive manner. The evidence of the incident in which Nani, while restrained, lunged aggressively at a housecleaner raises a genuine issue of material fact as to whether a prudent person would anticipate that Nani would chase someone if unrestrained. Together with that evidence, Mrs. Wilson’s efforts to keep Nani away from the housecleaners also raises a fact question about her knowledge of the dog’s propensities. See *634 Supan v. Griffin, 238 Ga. App. 404, 406 (519 SE2d 22) (1999) (evidence that, three months before dog bite, defendant told another person to “do whatever was necessary ... to keep the dogs from attacking” raised fact question as to defendant’s prior knowledge of dogs’ tendency to attack humans).
The dissent cites several cases in which we held that prior incidents, as a matter of law, did not show the defendant dog owner knew or should have known of the dog’s propensity to do the act that resulted in the plaintiff’s injury. In those cases, however, the dogs’ prior conduct was not as similar to the conduct that injured the plaintiff as is the case here. See, e.g., Kringle v. Elliott, 301 Ga. App. 1, 3 (1) (686 SE2d 665) (2009) (dog that bit plaintiff previously had attacked animals); Huff v. Dyer, 297 Ga. App. 761, 763 (1) (678 SE2d 206) (2009) (dog that bit plaintiff previously had barked when children were near it); Phiel v. Boston, 262 Ga. App. 814, 816-817 (1) (586 SE2d 718) (2003) (dog that bit plaintiff previously had charged down defendant’s driveway and growled at a person); Wade, 246 Ga. App. at 460 (1) (dog that bit plaintiff, who was familiar with it, previously had growled, chased and engaged in threatening actions toward strangers who approached its fenced enclosure); Hamilton v. Walker, 235 Ga. App. 635-636 (510 SE2d 120) (1998) (dog that bit plaintiff previously had growled, barked and appeared threatening to strangers); Durham v. Mooney, 234 Ga. App. 772, 773-774 (1) (507 SE2d 877) (1998) (dog that bit plaintiff previously had barked and growled at people); Rowlette v. Paul, 219 Ga. App. 597, 599 (466 SE2d 37) (1995) (dog that attacked and bit plaintiff, a stranger to it who had entered the defendant’s back yard, previously had bitten the defendant’s uncle when he startled the dog by banging on the porch where the dog was sleeping); Marshall v. Person, 176 Ga. App. 542, 543 (336 SE2d 380) (1985) (dog that jumped on plaintiff, a stranger to it, previously had jumped on its owners in a display of “frolicsome affection”); Banks v. Adair, 148 Ga. App. 254, 255 (251 SE2d 88) (1978) (dog bit plaintiff; decision does not describe any prior incidents but states that record was devoid of evidence to establish defendant’s “knowledge of his dog’s propensity to bite or injure humans”).
Because a fact question exists as to whether Nani had the propensity to do the act that caused Green’s injury and whether Mrs. Wilson had knowledge of that propensity, summary judgment was not appropriate. See Evans-Watson v. Reese, 188 Ga. App. 292, 293-294 (372 SE2d 675) (1988) (reversing grant of summary judgment to defendant in case involving injuries sustained when plaintiff ran from defendant’s dog, where there was evidence of defendant’s knowledge that dog previously had chased people, jumped at children, and had once “c[o]me at” a child).

*635
Judgment reversed.

Barnes, P. J., and Phipps, P. J., concur. Ellington, P. J., concurs in judgment only. Dillard, Ray and McMillian, JJ., dissent.