**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 8, 2015**

# In the Court of Appeals of Georgia

A15A0857. STEAGALD et al. v. EASON et al.

MCFADDEN, Judge.

Lori and Gary Steagald appeal the grant of summary judgment to defendants David, Cheryl, and Joshua Eason in this dog-bite case. The Steagalds argue that whether certain behavior put the Easons on notice of the dog's propensity to attack is a question of material fact that requires jury resolution. We hold that the incidents the Steagalds point to were simply evidence of the dog's menacing behavior that did not put the Easons on notice of the propensity to attack. We therefore affirm.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence

and all inferences drawn from it in a light favorable to the nonmovant." *Stennette v. Miller*, 316 Ga. App. 425, 426 (729 SE2d 559) (2012) (citation omitted).

So viewed, the evidence showed that the Steagalds and David and Cheryl Eason were neighbors. In 2011, Joshua Eason, the Easons' adult son, moved in with them because he and his wife were divorcing. Two-and-one-half months later, Joshua Eason asked his parents if he could keep his pit bull dog, Rocks, at the house; his former wife told him that she could no longer afford to care for the dog and that if Joshua Eason did not take it, she would take the dog to the pound. Joshua and his then-wife had rescued the dog from the side of the road six months before.

Cheryl Eason told Joshua Eason he could keep Rocks at the house temporarily if he built a pen for the dog inside the fenced back yard. Cheryl Eason wanted to ensure that the dog did not escape the yard, given that she did not know the dog's history. Cheryl Eason had only seen the dog two times before, when she had gone to the home of Joshua Eason and his former wife. On both occasions, the dog was happy to see her. Although they did not know the dog's history prior to its adoption, the Easons had never seen the dog act aggressively. There was no evidence that the dog ever had bitten any person before.

Gary Steagald testified that Cheryl Eason told him that on the first day that Rocks was at her house, he snapped at her when she went to feed him. That same day, Gary Steagald went to see the dog. He approached the dog in the pen and extended his fingers to the dog. The dog growled, barked, and snapped at him.

Six days later, Lori Steagald went over to the Easons' house to borrow some tea bags. Joshua Eason was in the fenced backyard, playing with Rocks, who was on a lead. Joshua Eason walked to the gate, leading Rocks, and opened the latch. Lori Steagald entered the backyard to meet the dog. She extended her hand so that Rocks could smell her. The dog approached her, then jumped up, latched on to her arm, and started biting down. Joshua Eason was very surprised. He began screaming, hitting the dog, and squeezing the dog's testicles, but he could not get the dog to release Lori Steagald. Joshua Eason's father, David Eason, and a cousin came out of the house to help Joshua Eason force the dog to release Lori Steagald's arm. Finally, the men succeeded in getting the dog off of Lori Steagald. As Lori Steagald was exiting the backyard, she slipped and fell, and the dog grabbed her leg. The men got the dog off her leg. Lori Steagald was taken by ambulance to the hospital, where she received stitches. She has undergone treatment with a neurologist and with pain specialists.

Our law as to negligence claims against dog owners provides that a dog owner will be liable for damages only if the owner has knowledge that the dog has the propensity to do the particular act which caused injury to the complaining party. Under this test, the plaintiff must show that the dog had the propensity to do the act that caused the injury and, if so, whether the owner had knowledge of that propensity. . . . [A] dog's aggressive or menacing behavior alone is not sufficient to place its owner on notice of a propensity to do a particular act.

*Green v. Wilson*, __ Ga. App. __, __ (__ SE2d __) (Case No. A15A0674, decided July 16, 2015) (citations and punctuation omitted).

The Steagalds argue that Rocks's snapping at Cheryl Eason and Gary Steagald put the Easons on notice that Rocks had the propensity to bite someone without provocation. We disagree.

The Steagalds have presented no details about Rocks's snapping at Cheryl Eason, other than Gary Steagald's testimony that Cheryl told him Rocks snapped at her when she went to feed the dog. As for the snapping at Gary Steagald, he testified that, as he approached the dog confined in its pen, he could tell from Rocks's body language that Rocks was uneasy. He saw Rocks "cower[ing] down" and "could almost see the ridge of hair standing up on his back." Nonetheless, he "stuck his finger up to it," causing Rocks to snap, growl, and bark. Gary Steagald conceded that

4

it would not be unusual for a dog to feel uneasy on its first day in an unfamiliar place and that he believed that the dog was afraid "of the situation." He also conceded that Rocks's behavior was normal for some dogs.

We conclude that Rocks's prior behavior, snapping at Cheryl Eason and Gary Steagald, was merely menacing behavior that "alone is not sufficient to place its owner on notice of a propensity to bite." *Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 460 (1) (540 SE2d 671) (2000) (citations and punctuation omitted) (dog that bit plaintiff, who was familiar with it, previously had growled, chased and engaged in threatening actions toward strangers who approached its fenced enclosure). Indeed, Gary Eason acknowledged that Rocks's snapping – when he was afraid and at an unfamiliar location – was not unusual dog behavior. We conclude that, as a matter of law, the first-day snapping incidents did not put the Easons "on notice that the dog would launch an unprovoked attack on a stranger coming into the yard." *Rowlette v. Paul*, 219 Ga. App. 597, 599 (466 SE2d 37) (1995) (dog that attacked and bit plaintiff, a stranger to it who had entered the defendant's backyard, previously had bitten the defendant's uncle when he startled the dog by banging on the porch where the dog was sleeping)."The record is devoid of evidence of previous attacks on people or animals," and the evidence the Steagalds presented was

5

insufficient to show that the Easons had notice that Rocks had the propensity to attack. *Wade*, supra, 246 Ga. App. at 460 (1) (540 SE2d 671) (2000). The trial court properly granted the Easons summary judgment.

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur*.