300 Ga. 717
FINAL COPY

S16G0293. STEAGALD et al v. EASON et al.

BLACKWELL, Justice.

Gary and Lori Steagald sued David, Cheryl, and Joshua Eason, alleging that the Easons failed to keep Joshua's dog properly restrained, and asserting that the Easons, therefore, were liable under OCGA § 51-2-7 for injuries that Lori sustained when the dog attacked her as she was visiting the Eason home. The Easons filed a motion for summary judgment, contending that the Steagalds had no evidence that the Easons had reason to know the dog to be vicious or dangerous and, therefore, in need of restraint. The trial court granted that motion, the Steagalds appealed, and in Steagald v. Eason, 334 Ga. App. 113 (778 SE2d 366) (2015), the Court of Appeals affirmed. On the petition of the Steagalds, we issued a writ of certiorari to review the decision of the Court of Appeals, and we now reverse.

Viewed in the light most favorable to the Steagalds,[1] the evidence of record shows that Gary and Lori and David and Cheryl were neighbors. In 2011, David and Cheryl's adult son, Joshua, moved into their home. Joshua asked if he could bring along his pit bull, known as "Rocks," and Cheryl agreed, but only after insisting that Joshua build a dog pen in the back yard. Joshua did so, and Rocks came to live at the Eason home. On the first day that Rocks was there, Rocks growled and snapped at Cheryl as she tried to feed the dog, and later that day, Cheryl observed Rocks growling, barking, and snapping at Gary, who was visiting the Eason home and had extended his hand close to the dog pen. Only about a week later, Lori came to the Eason home, and she entered the back yard through a gate. At that time, Joshua was playing in the back yard with Rocks, and Rocks was not confined within his pen, although he was on a lead. When Lori approached the dog and extended her arm, Rocks jumped at her, bit her arm, and latched onto it. Lori attempted to run away, and when she did, she slipped and fell. At that point, Rocks bit and latched onto her right leg. Lori sustained serious injuries as a result of the attack.

---

[1] On appeal from the grant of a motion for summary judgment, we must view the evidence of record in the light most favorable to the nonmoving parties. See Nguyen v. Southwestern Emergency Physicians, 298 Ga. 75, 84 (3) (779 SE2d 334) (2015).

The Steagalds sued the Easons under OCGA § 51-2-7, which in pertinent part provides:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. . . .[2]

OCGA § 51-2-7 "recognizes that the keeper of an animal known to have vicious or dangerous propensities owes a duty of care with respect to the management and restraint of the animal for the protection of those who may come into contact with it." Eshleman v. Key, 297 Ga. 364, 367 (2) (774 SE2d 96) (2015) (citation omitted). In this sense, the statute is simply a "restatement of the common law, and at common law, in order to support [an action against the owner or keeper of a vicious or dangerous animal for failure to restrain it], it

_____

[2] The statute was amended in 1985 to change "shall be liable" to "may be liable" in order to clarify that the standard for liability is negligence, not strict liability. See Eshleman v. Key, 297 Ga. 364, 368 (2), n. 3 (774 SE2d 96) (2015). The 1985 amendment also added a second sentence to OCGA § 51-2-7, which provides that, "[i]n proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash." See Johnston v. Warendh, 252 Ga. App. 674, 676 (1) (556 SE2d 867) (2001). In their response to the motion for summary judgment, the Steagalds conceded that the Easons did not violate any such ordinance, and so, the Steagalds had to point to other evidence of a dangerous or vicious propensity.

3

was necessary to show, not only that the animal was vicious or dangerous, but also that the owner [or keeper] knew this fact." Harvey v. Buchanan, 121 Ga. 384, 385 (49 SE 281) (1904). See also Friedman v. Goodman, 124 Ga. 532, 535 (52 SE 892) (1905). Our law does not presume that dogs are vicious or dangerous. To the contrary, it presumes that dogs, regardless of breed, are "of a harmless species," and for that reason, our courts require actual proof "of the dangerous nature of a particular dog and . . . of his owner's knowledge of [the particular dog's] deviation from presumptive harmlessness." Johnston v. Warendh, 252 Ga. App. 674, 677-678 (2) (556 SE2d 867) (2001). See also Brock v. Harris, 312 Ga. App. 493, 495 (718 SE2d 851) (2011). Even when it is shown that a dog is, in fact, vicious or dangerous, proof that its owner or keeper knows of the peculiar propensities that render the dog in question vicious or dangerous is an essential element of a lawsuit under OCGA § 51-2-7. See Harvey, 121 Ga. at 385. See also Sinclair v. Friedlander, 197 Ga. 797, 800 (30 SE2d 398) (1944) (knowledge must be shown "although the Code section [is] silent as to the necessity of its being shown"); Rowlette v. Paul, 219 Ga. App. 597, 599 (466 SE2d 37) (1995) ("Scienter is a necessary and a material fact

4

which must be shown before there can be any finding of liability against the defendant." (Citation and punctuation omitted)).

When it comes to cases involving dog bites, the requirement that the owner or keeper of a dog must be proved to have knowledge of the vicious or dangerous nature of his dog has become known as the "first bite rule." To the extent, however, that the term implies that the requisite knowledge cannot be proved unless and until the dog actually has bitten someone (and the owner or keeper knows it), the term is more than a bit misleading. As our Court of Appeals correctly has noted, the rule "'does not literally require a first bite.'" Kringle v. Elliott, 301 Ga. App. 1, 1-2 (686 SE2d 665) (2009). To be sure, a plaintiff must show that the owner or keeper has "reason to know of [the dog's] propensity to do harm of the type which it inflicts." Torrance v. Brennan, 209 Ga. App. 65, 67 (2) (432 SE2d 658) (1993) (citations and punctuation omitted). See also Johnson v. Kvasny, 230 Ga. App. 162, 163 (495 SE2d 651) (1998); Rowlette, 219 Ga. App. at 599. Cf. Munroe v. Universal Health Svcs., 277 Ga. 861, 863 (1) (596 SE2d 604) (2004) ("a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably

5

foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff"). But "this does not mean an incident involving the exact same conduct and the exact same injury must actually occur before the owner's knowledge may be inferred." Torrance, 209 Ga. App. at 67 (2). Rather, "to infer the requisite knowledge[,] there must be at least one incident that would cause a prudent person to anticipate the actual incident that caused the injury." Kringle, 301 Ga. App. at 2 (citation and punctuation omitted). See also Torrance, 209 Ga. App. at 67-68 (2) (owner's knowledge may be inferred if "there is an incident or incidents which would put a prudent man on notice to anticipate the event which occurred" (citation and punctuation omitted)). To the extent that the Court of Appeals held otherwise in Hamilton v. Walker, 235 Ga. App. 635 (510 SE2d 120) (1998) (a 4-3 decision), when it said that "the dog must have, on a prior occasion, done the same act which resulted in the injury comprising the tort action," id. at 635 (citations omitted), the Court of Appeals misconstrued its own precedent, and that decision is disapproved.

In this case, the Steagalds rely on the two snapping incidents — which occurred only about a week before Lori was bitten, and of which Cheryl was

6

aware — as proof that the Easons knew Rocks to have a propensity to bite persons without provocation, as the dog did when it attacked Lori. The Court of Appeals concluded, however, that the snapping incidents are not sufficient proof of knowledge, characterizing the snapping incidents as "merely menacing behavior," and noting that "the record is devoid of evidence of previous attacks on people or animals." See Steagald, 334 Ga. App. at 115 (citations and punctuation omitted). But on an appeal from the award of summary judgment, the evidence must be viewed in the light most favorable to the Steagalds, we must give the evidence on which the Steagalds rely as much weight as it reasonably can bear, and we must draw all inferences favorable to the Steagalds that a rational finder of fact reasonably could draw from the evidence of record. See Nguyen v. Southwestern Emergency Physicians, 298 Ga. 75, 84 (3) (779 SE2d 334) (2015). Looking at the record in this way, and given the way in which the snapping incidents were described by the evidence, a rational finder of fact could infer reasonably, we think, that Rocks snapping at Cheryl and Gary amounted to the dog attempting to bite Cheryl and Gary.[3] An attempt to bite in

---

[3] We note that Gary appears to have characterized the snaps in this way.

7

the absence of provocation most certainly may be proof of a propensity to bite without provocation.[4] And as the Court of Appeals correctly recognized in earlier decisions, when the evidence shows that an owner or keeper knows of such an attempted bite — that a dog has snapped at someone, nicked someone with its teeth, or otherwise used its mouth to attack someone without injuring her — it may well be sufficient to establish knowledge of a propensity to bite.[5]

---

[4] To be sure, when an earlier bite or attempted bite occurred in highly unusual circumstances, evidence of that bite or attempted bite may be inadequate to prove knowledge of a propensity to bite in other circumstances. Here, the Court of Appeals noted that Rocks was in an unfamiliar place when the dog snapped at Cheryl and Gary, it being the first day that Rocks was staying at the Eason home. That may well be an unusual circumstance, but it is not perfectly clear that the dog was in a materially different circumstance when it bit Lori only about a week later. Had the dog become so settled and accustomed to the Eason home in only a few days that one properly might conclude that the prior incidents involved such different circumstances that they could not have put the Easons on notice that Rocks might (on the day in question) bite someone without provocation in the same back yard? A jury certainly could reach that conclusion, but we do not think it so clear that we might reach the same conclusion *as a matter of law.*

[5] Similarly, the Court of Appeals also has indicated that a dog's prior jumping on or lunging at people creates a jury issue as to whether the owner was put on notice of his dog's propensity to jump on or chase people. See Green v. Wilson, 333 Ga. App. 631, 633 (773 SE2d 872) (2015) (physical precedent); Marshall v. Person, 176 Ga. App. 542, 543 (336 SE2d 380) (1985). In contrast, the Court of Appeals has indicated that barking and growling at people, without more, will not create a jury issue as to whether the owner was on notice of his dog's propensity to attack people. See Huff v. Dyer, 297 Ga. App. 761, 763 (1) (678 SE2d 206) (2009); Custer v. Coward, 293 Ga. App. 316, 319 (1) (667 SE2d 135) (2008); Wade v. American Nat. Ins. Co., 246 Ga. App. 458, 460 (1) (540 SE2d 671) (2000); Durham v. Mooney, 234 Ga. App. 772, 773 (1) (507 SE2d 877) (1988). Cf. Supan v. Griffin, 238 Ga. App. 404, 405-406 (519 SE2d 22) (1999); Thurmond v. Saffo, 238 Ga. App. 687, 688 (520 SE2d 43) (1999) (physical precedent).

See Raith v. Blanchard, 271 Ga. App. 723, 724 (1) (611 SE2d 75) (2005); Durham v. Mason, 256 Ga. App. 467, 468 (1) (568 SE2d 530) (2002); Torrance, 209 Ga. App. at 68 (2). See also Restatement (Third) of Torts: Phys. & Emot. Harm § 23, cmt. c. "Scienter" ("there can be circumstances, short of an actual bite, which suffice to give the dog owner reason to know of the dog's dangerous tendency; for example, the dog, without provocation, may lurch at a person evidently attempting to bite, but fails in this endeavor when the person successfully withdraws"); Restatement (Second) of Torts § 509, cmt. g. ("A dog is not necessarily regarded as entitled to one bite. It is enough that the possessor of the animal knows that it has on other occasions exhibited such a tendency to attack human beings . . . as should apprise him of its dangerous character. Thus, the fact that a dog has to his knowledge unsuccessfully attempted to attack human beings . . . is sufficient to [show scienter]."). Viewing the record (as we must at this point) in the light most favorable to the Steagalds, we conclude that whether the Easons had knowledge that Rocks had a propensity to bite another without provocation in the sort of circumstances in which he attacked Lori is a question for a jury. The judgment of the Court of Appeals is reversed.

Judgment reversed. All the Justices concur.

9

Decided March 6, 2017.

Certiorari to the Court of Appeals of Georgia — 334 Ga. App. 113.

Smith, Welch, Webb & White, Andrew J. Gebhardt, Marc A. Avidano; Vansaghi & Associates, Grant E. McBride, for appellants.

Mabry & McClelland, James W. Scarbrough, for appellees.

Robertson, Bodoh & Nasrallah, Matthew G. Nasrallah; Langdale Vallotton, William P. Langdale III; Butler, Wooten & Fryhofer, Tedra L. Cannella, amici curiae.