**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 28, 2022**

# In the Court of Appeals of Georgia

A22A1567. GOLDOLLER MANAGEMENT SERVICES, LLC et al v. KRISTIAN SMITH.

LAND, Judge.

In this interlocutory appeal, GoldOller Management Services, LLC and Jane Finch (collectively "appellants") appeal the trial court's denial of their motion for summary judgment in Kristian Smith's premises liability action. Smith's action seeks to hold appellants liable for injuries that Smith sustained in January 2020 when he tried to escape from a dog at the apartment complex managed by appellants. On appeal, appellants argue that the trial court erred in finding that there were genuine issues of material fact as to whether they were on notice of the allegedly vicious propensity of the dog such that the January 2020 incident was reasonably foreseeable.

Because Smith has failed to show that appellants had superior knowledge of any alleged vicious propensity of the dog, we reverse.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the nonmovant." (Citations and punctuation omitted.) *Stolte v. Hammack*, 311 Ga. App. 710, 711 (716 SE2d 796) (2011).

So viewed, the record shows that Kristian Smith lived at an apartment complex managed by GoldOller. On December 1, 2019, Smith sent an email to the apartment complex about two encounters with an unidentified dog and its owner. Smith's email stated that, a few weeks prior, while he was jogging on a trail around the apartment complex lake, he "crossed paths" with a "a[] short white woman with short grey hair, appearing to be in her 70's and walking with a cane," and a dog that was about "half [the owner's] size." Smith did not know who the woman was or if she was a resident at the complex. According to Smith, the dog "barked at [him] and tried to charge

[him] as [the woman] attempted to hold him back."[1] Smith's email further stated that, on December 1, he was jogging past the bottom of a set of stairs leading from the lake when he encountered the woman and her dog again, who were standing at the top of the steps. According to Smith, "the dog barked at [him] and [the woman] was apparently trying to hold [the dog] back from charging in [Smith's] direction." Smith continued jogging around the lake; meanwhile, the woman brought the dog down the stairs and into the jogging path. Smith stopped about 20 yards away "out of fear for [his] safety" and confronted the woman, who told Smith he was making her feel unsafe. Smith's email concluded by stating that he "should be able to jog around the lake" without feeling like he "might be attacked by another person's pet" and requested to speak with someone to resolve the issue.

Several days later, on December 9, 2019, Smith had not yet received a response to his email, so he went to the apartment leasing office and spoke with the property manager, Jane Finch, in person. Finch asked Smith to forward his December 1 email, which he did, but Finch was unable to identify the woman and asked Smith to take a photo of the woman and her dog the next time he saw her. . Smith did not ask Finch

---

[1] Smith later testified that the dog also "snapped as if it were trying to bite [him]," but Smith's email does not mention any attempted biting, nor did Smith testify that he told appellants that the dog had tried to bite him.

3

to take any specific action against the woman, and although Smith continued to see the woman throughout December, he did not take a photo or try to identify her.

On January 7, 2020, Smith was walking towards the set of stairs leading to the jogging trail when he again saw the woman and the dog, which was leashed, about 20 to 30 yards away from him. As Smith reached for his phone to take a photo, he heard the dog bark and saw the woman lose control of the dog's leash and fall to the ground. As the dog ran towards him, Smith attempted to find more stable ground, lost his footing, fell, and injured himself. The dog stopped "about three feet away" from Smith, barked "for a few more seconds," and then walked back to the woman, who told Smith that he had scared the dog and left the area. Smith called 911 and spoke with an animal control officer, who arrived and told Smith to call back when he had identified the location of the dog. Smith also sent an email to Finch describing how the dog had "attacked" him, attached photos he had taken of the woman, her dog, and his injuries, and spoke with Finch on the phone. Smith then drove around the apartment complex until he found the woman in the designated dog park area. Smith called the apartment complex office, told them that he had been attacked by a dog, and requested again to speak to Finch. Smith waited in his truck until Finch, EMTs, and animal control arrived at the dog park.

4

Both Finch and animal control spoke with the woman, who was identified as Carmella Michaels, a nonresident temporarily living with her daughter , a tenant at the apartment complex. Michaels was not listed as a resident on her daughter's lease. Additionally, although the complex required residents with pets to obtain approval from management under a signed addendum, neither Michaels nor her daughter had informed appellants that Michaels owned a dog , registered the dog with the apartment complex, or paid any pet fees to the apartment complex. On the day of the incident, Michaels' daughter was sent a pet policy violation notice and a "pet rent" addendum to her lease, which was never signed. The dog was later identified as a possible German Shepherd mix.

Smith filed a lawsuit against GoldOller, Finch, and others, asserting, inter alia, a premises liability claim under OCGA § 51-3-1 and a claim for the negligent performance of a voluntary undertaking. Appellants filed a motion for summary judgment , and after a hearing , the trial court entered an order granting appellant's motion as to the voluntary undertaking claim, but denying appellant's motion for summary judgment as to the premises liability claim, finding that there were issues of material fact as to whether the dog had a vicious propensity and whether appellants were on notice of the vicious propensities of the dog such that the January 2020

incident was reasonably foreseeable. Thereafter, the trial court granted the appellants a certificate for immediate review, and this Court granted their application for an interlocutory appeal.

1. Appellants argue that the trial court erred in denying their motion for summary judgment because there is no issue of fact as to whether appellants were on notice of any vicious propensity of the dog. We agree that the trial court erred in denying summary judgment, but we rest our holding on a slightly different ground. Specifically, whether or not the appellants were on notice of this dog's allegedly vicious propensity (indeed, whether this dog had any such propensity at all), it is clear that Smith's knowledge of the dog's alleged propensity was at least equal to or greater than that of the appellants. Under these circumstances, Smith's claim is barred as a matter of law, and the trial court erred erred in denying summary judgment to appellants.[2]

---

[2]Because Smith's claim is barred by his equal or superior knowledge of this dog's allegedly vicious propensity, we need not reach the question of whether the dog's reported behavior was in fact vicious or dangerous. However, we observe that Georgia law "does not presume that dogs are vicious or dangerous. To the contrary, it presumes that dogs, regardless of breed, are of a harmless species[.]" (Punctuation omitted.) *Steagald v. Eason*, 300 Ga. 717, 719 (797 SE2d 838) (2017) Further,"[a dog's] barking at people generally does not serve as evidence of vicious propensity." *Dilfield v. Bealing*, 357 Ga. App. 279, 282 (1) (850 SE2d 469) (2020).

Georgia premises liability law imposes liability on a property owner for "injuries caused by [the owner's] failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. A property owner's liability under this statute is based on his or her superior knowledge of the hazard causing the injury. See *Cherokee Main Street, LLC v. Ragan*, 345 Ga. App. 405, 407 (813 SE2d 397) (2018). "In other words, a plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was *equal to or greater* than that of the defendant." (Citation and punctuation omitted; emphasis supplied.) Id.

Where a plaintiff seeks to recover under the premises liability statute for injuries resulting from a dog's behavior, a plaintiff "must produce evidence of the vicious propensity of the dog in order to show that the owner of the premises had superior knowledge of the danger." (Footnote omitted.) *Swanson v. Tackling*, 335 Ga. App. 810, 812 (783 SE2d 167) (2016). See also *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998) (although plaintiff's case was based "on the premises liability statute (OCGA § 51-3-1) rather than the dog bite liability statute (OCGA § 51-2-7), [the plaintiff] was still required to produce evidence of the vicious propensity of the dog in order to show the dangerous condition of which the premises owner had

7

superior knowledge"). "[K]nowledge of a dog's prior aggressiveness is critical[,]" as "mere knowledge that a dog exists – or even that a particular dog exists – is not sufficient to make an attack reasonably foreseeable." *Tyner v. Matta-Troncoso*, 305 Ga. 480, 488 (3) (826 SE2d 100) (2019). Thus, a plaintiff must show both that the dog had a vicious propensity, and that the premises owner had superior knowledge of the dog's vicious propensity. See *Stolte*, 311 Ga. App. at 712 (a plaintiff's "equal knowledge of the dog's vicious propensity . . . bars recovery under Georgia's premises liability statute").

Here, Smith relies on the two prior incidents documented in his December 1 email describing the dog barking and attempting to charge him, which occurred about a month before Smith was injured, as proof that appellants knew the dog to have a propensity to chase him. However, even assuming that the prior incidents were sufficient to create an issue of material fact as to the dog's propensity to chase people, see *Green v. Wilson*, 333 Ga. App. 631, 633 (773 SE2d 872) (2015) (physical precedent only), the undisputed evidence demonstrates that Smith's knowledge of this alleged hazard was equal to or greater than that of appellants. See *Stolte*, 311 Ga. App. at 711-712 (1) (where plaintiff and home owner had equal knowledge of a dog's propensity to bite, plaintiff was barred from recovery under Georgia's premises

8

liability statute). See also *Harper v. Robinson*, 263 Ga. App. 727, 729 (3) (589 SE2d 295) (2003) (physical precedent only) (where plaintiff was "at least as familiar as" homeowner with dog's history, plaintiff could not establish that the homeowner possessed superior knowledge of the dog's alleged propensity to harm people).

The record shows that Smith was able to identify Michaels and her dog and that he encountered them numerous times prior to the January 2020 incident, but Smith only provided appellants with a vague description of Michaels and her dog. Further, Michaels was not a tenant in the complex and was not listed on her daughter's lease. Neither Michaels nor her daughter had informed appellants that Michaels owned a dog, registered the dog with the apartment complex, or paid any pet fees to the apartment complex. Thus the record shows at most that appellants were aware that an older unidentified woman was walking an unidentified large dog on the complex property, and that while standing some distance from Smith, the dog had barked and pulled at his leash toward Smith on two occasions. This evidence falls far short of creating a jury question as to the appellants' allegedly superior knowledge of the dog's vicious propensity, and the record is in fact devoid of any such evidence. Therefore, the trial court erred in denying summary judgment to appellants.

2. As a result of our holding in division 1, we need not reach appellants' remaining enumerations of error.

*Judgment reversed. McFadden, P. J., and Gobeil, J., concur.*