[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10486
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00032-LGW-RSB

HARVEY O.J. SIMPSON, SR.,
JAKIMA SIMPSON,
HARVEY O.J. SIMPSON, JR.,

Plaintiffs-Appellants,

versus

MICHAEL VICKERS,
COFFEE COUNTY SCHOOL DISTRICT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 10, 2017)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Harvey O.J. Simpson Sr. (Mr. Simpson), Jakima Simpson (Mrs. Simpson), and Harvey O.J. Simpson Jr. filed a complaint against Michael Vickers and the Coffee County School District raising claims under 42 U.S.C. § 1983 and Georgia state law. The Simpsons alleged, among other things, that (1) Vickers, a school resource officer at Simpson Jr.'s school, used excessive force against Mrs. Simpson, (2) Vickers committed assault and battery against Mrs. Simpson, and (3) the School District violated Simpson Jr.'s procedural due process rights. The district court granted summary judgment to Vickers and the School District. This is the Simpsons' appeal.

I

While monitoring school security cameras, Vickers witnessed Simpson Jr. violate school rules. Simpson Jr.'s assistant principal later met with Simpson Jr., informed him that he would be suspended for the violation, and asked him to sign a disciplinary report. Simpson Jr. refused to sign the disciplinary report, and the next day Mr. and Mrs. Simpson visited Simpson Jr.'s school to review the video footage of the violation. The assistant principal directed them to Vickers.

Mr. and Mrs. Simpson went to Vickers's office to review the video footage, but Vickers had difficulty locating the footage so he asked Mr. and Mrs. Simpson to wait outside his office while he searched for it. They refused. Vickers repeated his request several times and asked Mr. and Mrs. Simpson what he could do to

2

convince them to leave the office.  After Mr. and Mrs. Simpson continued to refuse to leave the office, Vickers drew his taser.  Mr. and Mrs. Simpson then left the office.  As Mrs. Simpson was leaving, Vickers began to close his office door, causing the door to touch Mrs. Simpson.  Vickers could not see Mrs. Simpson when he was closing the door and was unaware that the door touched her.  After leaving the office, Mr. and Mrs. Simpson met with a different school resource officer who located the video footage and showed it to them.

The Simpsons later sued Vickers and the School District.  They alleged that (1) Vickers used excessive force against Mrs. Simpson when he drew his taser and closed his office door on her, (2) Vickers committed assault and battery against Mrs. Simpson when he closed the door on her, and (3) the School District violated Simpson Jr.'s procedural due process rights because it suspended him without letting him review the video footage of his school violation.[1]

II

We review de novo the district court's grant of summary judgment to Vickers and the School District, drawing "all reasonable inferences in the light most favorable to the" Simpsons.  *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  Summary judgment may be granted only if "there is no genuine

---

[1] The Simpsons raised other claims before the district court, but they did not address the claims in their appellants' brief, so they have abandoned the claims. *See United States v. Dougherty*, 754 F.3d 1353, 1358 (11th Cir. 2014).

3

issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986) (internal quotation marks omitted).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S. Ct. at 2510.

### III

After careful consideration of the record and the parties' briefs, we affirm. None of the Simpsons' claims present a genuine issue of material fact.  Even taking the evidence in the light most favorable to the Simpsons, Vickers and the School District are entitled to judgment as a matter of law.

### A

Vickers is entitled to qualified immunity on Mrs. Simpson's excessive-force claim.[2]  "Qualified immunity protects government officials performing discretionary functions from . . . liability if their conduct violates no clearly established . . . constitutional rights of which a reasonable person would have known." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823 (11th Cir. 1997) (en banc) (internal quotation marks omitted).  In determining whether a government official's conduct violated a clearly established constitutional right,

---

[2] Although the district court dismissed Mrs. Simpson's claim without reaching the issue of qualified immunity, "we may affirm for any reason supported by the record, even if not relied upon by the district court." *See United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012) (internal quotation marks omitted).

"[t]he salient question is whether the state of the law at the time of the [conduct] gave [the official] fair warning that [the] conduct was unlawful." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (internal quotation marks omitted).  No reasonable jury could find that Vickers had fair warning that his conduct towards Mrs. Simpson constituted excessive force.  *See id.*

Mrs. Simpson asserts that Vickers, in drawing his taser and touching her with his office door, used excessive force against her because his conduct amounted to an unreasonable seizure under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989) ("[Claims alleging] excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard . . . ." (internal quotation marks omitted)).  But at the time of Mrs. Simpson's encounter with Vickers, neither a constitutional principle nor case law established that Vickers's conduct constituted an unreasonable seizure.  *See D.H. by Dawson v. Clayton Cty. Sch. Dist.*, 830 F.3d 1306, 1318 (11th Cir. 2016) (identifying the ways in which a right may be clearly established).  Further, the conduct was not "so egregious" as to compel the conclusion that it violated Mrs. Simpson's Fourth Amendment rights.  *See id.*

Mrs. Simpson also argues, as an alternative to her unreasonable-seizure argument, that Vickers's conduct violated her Fourteenth Amendment substantive

5

due process right against excessive force.  However, a government official must use force that "shocks the conscience" to violate the Fourteenth Amendment, and at the time of Vickers's conduct, the law did not clearly establish that the conduct met this shock-the-conscience "criterion."  *See Wilson v. Northcutt*, 987 F.2d 719, 722 (11th Cir. 1993) (internal quotation marks omitted).

### B

Vickers is entitled to official immunity on Mrs. Simpson's claims that he committed assault and battery against her when he closed his office door on her.  In Georgia, official immunity bars "any suit against a public official in his . . . individual capacity" if the official (1) "has engaged in discretionary acts that are within the scope of his . . . authority, and (2) "has not acted in a wil[l]ful or wanton manner," "with actual malice," or "with the actual intent to cause injury."  *Brown v. Penland Const. Co.*, 641 S.E.2d 522, 523 (Ga. 2007).  Both requirements are satisfied here.  First, Vickers's actions during his encounter with Mrs. Simpson were discretionary acts within the scope of his authority.  Consistent with his role as a school resource officer, he exercised "personal deliberation and judgment" to resolve a tense situation.  *See Eshleman v. Key*, 774 S.E.2d 96, 99 (Ga. 2015) (internal quotation marks omitted).  Second, no reasonable jury could find that Vickers acted willfully or wantonly, with actual malice, or with actual intent to cause injury.  As the district court found, "the undisputed facts show that [Vickers]

6

could not even see [Mrs. Simpson] when he closed [his office] door, much less [that he] intend[ed] to harm her." *Simpson v. Coffee Cty. Sch. Dist.*, No. 13-00032, slip op. at 20 (S.D. Ga. Aug. 16, 2016).

## C

No reasonable jury could find that the School District violated Simpson Jr.'s procedural due process rights when it suspended him. "[W]hen a student is suspended for fewer than ten days, the process provided need consist only of oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *C.B. By & Through Breeding v. Driscoll*, 82 F.3d 383, 386 (11th Cir. 1996) (internal quotation marks omitted). Simpson Jr. was suspended for only three days, and his assistant principal met with him to discuss the suspension, explained to him the charge underlying the suspension, and gave him an opportunity to respond to the charge. Also, although the Simpsons complain that the assistant principal did not show Simpson Jr. the video footage that led to the suspension, the School District showed the Simpsons the footage the day after Simpson Jr.'s meeting with the assistant principal.

## IV

The district court did not err in granting summary judgment to Vickers and the School District. Even taking the evidence in the light most favorable to the

Simpsons, no "reasonable jury could return a verdict" in their favor.  *See*

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

   **AFFIRMED.**