S99A0248. COBB COUNTY SCHOOL DISTRICT v. BARKER.

(518 SE2d 126)

BENHAM, Chief Justice.

We granted appellant Cobb County School District's discretionary application in order to review the decision of the Superior Court of Cobb County which upheld the constitutionality of former OCGA § 34-9-200.1 (g) (6).[1] The trial court also affirmed the decision of a workers' compensation administrative law judge which reinstated appellee Betty Barker's temporary total disability benefits after finding her work-related injury was "catastrophic," as that term is defined in OCGA § 34-9-200.1 (g).

In January 1991, Ms. Barker suffered a compensable injury to her right arm during her employment as a school bus driver for the school district. She received total disability benefits from her employer, returned to work, re-injured her right arm in April 1993, and again received total disability benefits. In April 1995, Barker applied for Social Security disability benefits based on the injury to

---

[1] The version of OCGA § 34-9-200.1 (g) (6) at issue was in effect from July 1, 1992, until it was amended effective July 1, 1995. During that time, subsection (g) defined "catastrophic injury" as "any injury which is one of the following:"

(1) Spinal cord injury involving severe paralysis of an arm, a leg, or the trunk;

(2) Amputation of an arm, a hand, a foot, or a leg involving the effective loss of use of that appendage;

(3) Severe brain or closed head injury as evidenced by . . .

(4) Second or third degree burns over 25% of the body . . .

(5) Total or industrial blindness; or

(6) Any other injury of a nature and severity as has qualified or would qualify an employee to receive disability income benefits under Title II or supplemental security income benefits under Title XVI of the Social Security Act . . . .

The General Assembly's 1992 amendment of OCGA § 34-9-200.1 (g) (1-5) more specifically defined "catastrophic injury." Compare Ga. L. 1989, p. 579, § 4. Subsection (g) (6), at issue here, was added in the last floor amendment in the House of Representatives. G. Mark Cole, Labor and Industrial Relations, 9 GSU L. R. 285, 289, n. 34. When subsection (g) was amended in 1995, (g) (6) made a Social Security award of disability or supplemental security income benefits an evidentiary matter to be considered when deciding whether an injury was "catastrophic." See Ga. L. 1995, p. 642, § 9. The 1995 modification of subsection (g) (6) was an effort to eliminate the confusion which had arisen in applying Social Security findings to state workers' compensation proceedings. Kimberly A. Stout, Labor and Industrial Relations, 12 GSU L. R. 280, 287. Because the 1995 amendment was not given retroactive effect, the 1992 version of subsection (g) (6) remains applicable to injuries suffered from July 1, 1992 until July 1, 1995. Hiers and Potter, Ga. Workers' Compensation Law and Practice (3rd ed.), § 26-1.1 (1998 supp.).

her right arm and was awarded federal disability benefits from March 1994. Barker's employer was not notified of the application for federal benefits and did not appear at the hearing conducted by the Social Security Administration's administrative law judge.

In July 1997, the school district converted Barker's temporary total disability benefits to temporary partial disability benefits, resulting in a reduction of nearly $50 in weekly benefits. The school district did so pursuant to OCGA § 34-9-104 (a) (2), which permits an employer in certain circumstances to unilaterally convert a non-catastrophically-injured employee's benefits for total disability to benefits for partial disability. In response to the school district's action, Barker sought a hearing before a workers' compensation ALJ in order to have her injury classified as "catastrophic" under OCGA § 34-9-200.1 (g) (1992) and have her temporary total disability benefits restored. Barker based her claim for catastrophic designation on the Social Security Administration's award of disability benefits to her. See § 34-9-200.1 (g) (6) (1992). The workers' compensation ALJ conducted a hearing on Barker's application at which hearing Barker testified and the deposition of her treating physician was entered into evidence. The ALJ found that Barker's arm injury was a "catastrophic injury" under § 34-9-200.1 (g) (6) since the injury had qualified Barker to receive Social Security benefits, and ordered the school district to recommence payment of temporary total disability benefits. The ALJ noted that the school district had mounted a constitutional attack on subsection (g) (6), but concluded that an ALJ was not authorized to declare a statute unconstitutional and that a workers' compensation hearing was not the appropriate forum in which to adjudicate the issue of the constitutionality of a statute.

On appeal to the superior court, the school district again contested the constitutionality of subsection (g) (6), contending that the statute created a conclusive presumption concerning a Social Security disability award in a workers' compensation proceeding, the application of which presumption deprived the school district of its constitutional right to due process since the school district had not been given the opportunity to be present and offer evidence at the Social Security hearing. The school district also asserted that the statutory subsection violated its right to equal protection of the laws. The superior court rejected the school district's constitutional claims after finding there was a non-arbitrary and rational basis for the presumption of catastrophic injury contained in subsection (g) (6). As stated earlier, we granted the school district's application for a discretionary appeal to examine the trial court's determination.

1. We begin our review by recognizing that subsection (g) (6) (1992) is a solemn act of the General Assembly, and therefore comes to court cloaked with a presumption of constitutionality. *State v.*

*Brannan*, 267 Ga. 315, 317 (477 SE2d 575) (1996). As an appellate court, we have a duty to construe a statute in a manner which upholds it as constitutional, if that is possible. *Garner v. Harrison*, 260 Ga. 866, 869 (400 SE2d 925) (1991). If a statute is susceptible of more than one meaning, one of which is constitutional and the other not, we interpret the statute as being consistent with the Constitution. *City of Columbus v. Rudd*, 229 Ga. 568 (3) (193 SE2d 11) (1972). It is only when it is established that the legislation "manifestly infringes upon a constitutional provision or violates the rights of the people" that the statute should be declared unconstitutional. *Miller v. State*, 266 Ga. 850 (2) (472 SE2d 74) (1996).

2. The constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard. *Nix v. Long Mountain Resources*, 262 Ga. 506 (3) (422 SE2d 195) (1992). Neither the federal nor the state constitution's due process right guarantees a particular form or method of procedure, but is satisfied if a party "has reasonable notice and opportunity to be heard, and to present [its] claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. [Cit.]" *Zorn v. Walker*, 206 Ga. 181 (2) (56 SE2d 511) (1949). The principles of due process "extend to every proceeding . . . judicial or administrative or executive in its nature" at which a party may be deprived of life, liberty, or property. *Zachos v. Huiet*, 195 Ga. 780 (2) (25 SE2d 806) (1943).

3. In the case at bar, the school district claims that subsection (g) (6) requires the ALJ to adopt as conclusive on the issue of "catastrophic injury" a determination made in another forum where the school district had no notice of a hearing on the issue and no opportunity to be heard on the matter. A presumption which authorizes a fact-finder to find the existence of a fact from proof of one or more other facts is not invalid per se. *Isaacs v. State*, 259 Ga. 717 (35) (b) (386 SE2d 316) (1989). A rebuttable presumption which has a rational connection between what is proved and what is to be inferred does not constitute a denial of due process. *Reid v. Perkerson*, 207 Ga. 27 (6) (60 SE2d 151) (1950). However, a presumption which cannot be rebutted by any amount of uncontradicted evidence or which precludes any opportunity for the production of contrary evidence is inconsistent with the principles of due process. *Nagel v. State*, 262 Ga. 888 (1) (427 SE2d 490) (1993); *In the Interest of B. L. S.*, 264 Ga. 643, 647 (449 SE2d 823) (1994) (Sears, J., concurring in part and dissenting in part). See also *Ga. Self-Insurers &c. v. Thomas*, 269 Ga. 560, 562 (501 SE2d 818) (1998), where this Court observed that "[e]stablishment of a *conclusive* presumption, arising from drug test results, that a claimant's injury was due to intoxication or drug use may violate due process." But see *Flint River Mills v.*

*Henry*, 239 Ga. 347 (236 SE2d 583) (1977), where this Court hel that OCGA 34-9-13's conclusive presumption of dependency upon deceased worker was constitutional.

With these legal tenets in mind, we examine OCGA § 34-9-200. (g) (6) (1992). Subsections (g) (1-5) define as "catastrophic" severa types of specific injuries with greater precision than the earlier ver sion of subsection (g). Compare Ga. L. 1989, p. 579, § 4. Subsectior (g) (6) (1992) provides a more concise generic definition of "cata strophic injury" than its earlier counterpart by describing "cata strophic injury" as an "injury of a nature and severity as has quali fied or would qualify an employee to receive disability income benefits under Title II or supplemental security income benefit under Title XVI of the Social Security Act. . . ." The school distric reads (g) (6) as requiring the workers' compensation ALJ who i presented with evidence of a Social Security disability or SSI awar to summarily conclude that the claimant has suffered a "catastrophi injury." We do not agree. Subsection (g) (6) does not state that "cata strophic injury" is conclusively presumed from the award of federal disability or SSI benefits. Compare statutes in which the General Assembly has enacted a conclusive presumption expressly, e.g., OCGA § 2-10-60 (2) (conclusive presumption of receipt of commis- sioner's order and notice of opportunity for hearing); OCGA § 14-10- 16 (conveyance in the name of a professional association executed by the president and attested by the secretary conclusively presumed to be properly executed); OCGA § 32-6-27 (a) (conclusive presumption that overweight vehicle damaged roads); OCGA § 34-9-13 (b) (per- sons conclusively presumed to be next of kin wholly dependent upon deceased employee for support); OCGA § 44-5-85 (seven years of exclusive, rent-free possession by a child of lands originally owned by parents creates a conclusive presumption that the child was given the land.[2] Nothing in subsection (g) (6) states with the specificity pre- viously used by the Legislature that an award of Social Security ben- efits is to be conclusively presumed to be a finding of "catastrophic injury." Furthermore, an award of Social Security Title II or Title XVI benefits cannot be conclusively presumed to entitle the claimant to workers' compensation's "catastrophic injury" status because the Social Security Act, by definition, encompasses more maladies than does the Workers' Compensation Act. The standard required to be met under the portions of the Social Security Act referred to in sub- section (g) (6) "is generally referenced as the inability to engage in any substantial gainful activity by reason of any medically determi-

---

[2] OCGA § 44-5-85 was amended by the 1998 General Assembly to replace the conclusive presumption with a rebuttable presumption. Ga. L. 1998, p. 1304, § 1.

nable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Hiers & Potter, Ga. Workers' Compensation Law and Practice (3rd ed.), § 26-1.1, n. 1. So, the underlying physical condition which supports a Social Security award may not meet the definition of "injury" found in the Workers' Compensation Act, OCGA § 34-9-1 (4), while a "catastrophic injury" must. Accordingly, a workers' compensation claimant armed with a Social Security award and seeking "catastrophic injury" status must establish that her injury arose out of and in the course of employment; was not caused by the wilful act of a third person for personal reasons; was not, with explicit exceptions, coronary-related or a disability related to alcoholism or drug addiction (OCGA § 34-9-1 (4)); and was not the result of a mental impairment that was not preceded or accompanied by physical trauma. *Abernathy v. City of Albany*, 269 Ga. 88 (495 SE2d 13) (1998). In the absence of more explicit direction from the General Assembly and in light of our duty to construe a statute constitutionally, if possible, we do not read the "has qualified . . . to receive [federal] disability benefits" language of subsection (g) (6) as mandating the Workers' Compensation ALJ to conclusively presume a finding of "catastrophic injury" solely because the claimant has been awarded Social Security disability or SSI benefits.

Rather than being a conclusive presumption, subsection (g) (6) is merely definitional and provides, at most, a rebuttable presumption that the claimant has suffered a compensable "catastrophic injury." Using the standard applied in Social Security cases, subsection (g) (6) defines a "catastrophic injury" as one which is medically determinable, is expected to result in death or has lasted or is expected to last at least 12 continuous months, and has rendered the claimant unable to engage in substantial gainful activity. That the Social Security Administration has deemed the claimant eligible for disability or SSI benefits is not the focus of subsection (g) (6); instead the ALJ must look at the facts presented and the parties' arguments and make an independent determination that the injury alleged by the claimant to be catastrophic falls within the coverage of the Workers' Compensation Act and meets the definition set forth above. Certainly, the fact that the claimant is receiving federal disability or SSI benefits is evidence that the claimant has suffered a medically determinable malady expected to result in death or last 12 continuous months and which has made the claimant unable to engage in substantial gainful activity. That evidence, however, is subject to rebuttal by the claimant's employer or its insurer at the hearing before the Workers' Compensation ALJ, thereby providing the employer with an opportunity to be heard on the issue.

In light of the above, we affirm that portion of the trial court's

judgment which found the statute constitutional. We are, however, unable to affirm the trial court's affirmance of the administrative decision that Barker suffered a "catastrophic injury" because we are unable to state with certainty that the ALJ did not employ a conclusive presumption based on the award of Social Security benefits. In the case at bar, the ALJ had before her the Social Security award and the findings on which the award was based, and heard testimony from the claimant and had the deposition testimony of the claimant's treating physician, both of whom were examined by counsel for the school district. From the ALJ's two findings of "catastrophic injury" based on subsection (g) (6),[3] it appears that the ALJ may have based her finding on the fact that the claimant had been awarded Social Security disability benefits. Since we have held that (g) (6) does not authorize such a conclusive presumption, we vacate the trial court's affirmance of the administrative decision with direction that the administrative decision be vacated and the case remanded to the ALJ in order that she might clarify her findings in light of our holding herein.

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*

DECIDED MAY 3, 1999.

*Brock, Clay, Wilson & Rogers, Mason B. Rountree,* for appellant.
*Mundy & Gammage, Miles L. Gammage, E. Lamar Gammage, Jr.,* for appellee.
*Finn & Hurtt, Thomas M. Finn, Hamilton, Westby, Marshall & Antonowich, Bernard F. Kistler, Jr.,* amici curiae.

---

[3] 8. Based on the evidence presented, I find that the arm injury the employee suffered while working for the employer qualified the employee to receive Social Security benefits. Accordingly, pursuant to the 1992 version of OCGA § 34-9-200.1 (g) (6), the employee has a catastrophic injury . . .

11. Inasmuch as the employee's work-related injury to her right upper extremity has qualified the employee to receive Social Security disability benefits. I find that the employee's injury is catastrophic pursuant to the provisions of OCGA § 34-9-200.1 (g) (6). . . .