309 Ga. 117
FINAL COPY

S20A0161.  S&S TOWING & RECOVERY, LTD. et al. v.
CHARNOTA.

MCMILLIAN, Justice.

We granted an interlocutory appeal in this "dog bite" case and expressed particular concern about whether the second sentence of OCGA § 51-2-7, which provides that an animal running at large in violation of a local "leash law" is considered a "vicious" animal, violates procedural due process. For the reasons set forth below, we conclude that it does not and remand this case for further proceedings.

The underlying facts show that on November 7, 2015, Michael Charnota was walking his dog "Katie," who was leashed, in front of his residence in Paulding County when a dog later identified as "Tucker" attacked and killed Katie. When Charnota carried Katie into his home, Tucker followed and attacked Charnota, seriously

injuring him.[1] Prior to the attack, Tucker had been kept on the premises of S&S Towing & Recovery, Ltd., which is located approximately 1,000 feet from Charnota's residence and owned by Timothy and Paula Seals. On the day of the attack, Tucker had apparently escaped from the S&S Towing lot and was not on a leash or under the control of a person as required by the Paulding County Code.[2]

Charnota filed a complaint for damages against the Sealses, individually, and S&S Towing (collectively "S&S Towing"). Charnota asserted several causes of action, including a claim for liability under OCGA § 51-2-7, which provides in pertinent part as follows:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his

---

[1] Charnota alleges that he was taken by ambulance to a hospital where he received emergency care and later underwent surgery on his arm, eventually incurring more than $51,000 in medical expenses.

[2] Paulding County Code § 14-12 provides in pertinent part that "[n]o animal shall be allowed to roam free and when not on the property of its owner must be on a leash, or similar physical control device, and in the control of a person."

> own act may be liable in damages to the person so injured. *In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.*

(Emphasis supplied.)

S&S Towing filed a motion in limine seeking to, among other things, prohibit Charnota from using, referencing, or relying on the evidentiary presumption of viciousness created by OCGA § 51-2-7 on the ground that the statute is facially invalid under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Finding the evidentiary presumption of vicious propensity to be constitutional, the trial court rejected this facial challenge, but also issued a certificate of immediate review. S&S Towing filed an application for interlocutory appeal to the Court of Appeals, but the case was transferred to this Court because it invoked our jurisdiction over constitutional questions. We then granted S&S Towing's application and issued a question asking whether the second sentence of OCGA § 51-2-7 violates procedural

due process.

On appeal, S&S Towing maintains that the trial court erred in upholding the constitutionality of OCGA § 51-2-7 because it creates an irrebuttable statutory presumption that an owner of a dog is aware of the dog's vicious propensity. According to S&S Towing, this presumption violates the procedural due process protections afforded under the Fourteenth Amendment because the presumption does not allow an opportunity to present rebuttal evidence that the animal had never before bitten anyone or otherwise exhibited a dangerous or vicious propensity. We disagree that the statute violates the Fourteenth Amendment.

1. Our analysis begins with the recognition that "[w]e presume that statutes are constitutional, and before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this Court must be clearly satisfied of its unconstitutionality." *Ga. Dept. of Human Svcs. v. Steiner*, 303 Ga. 890, 894 (II) (815 SE2d 883) (2018) (citation and punctuation omitted). In addition, "we have a duty to construe a

statute in a manner which upholds it as constitutional, if that is possible." *Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (1) (518 SE2d 126) (1999). Thus, "[i]f a statute is susceptible of more than one meaning, one of which is constitutional and the other not, we interpret the statute as being consistent with the Constitution." Id. "Because all presumptions are in favor of the constitutionality of a statute, the burden is on the party claiming that the law is unconstitutional to prove it." *Steiner*, 303 Ga. at 894-95 (II).

With these principles in mind, we turn to S&S Towing's argument that OCGA § 51-2-7 contravenes its Fourteenth Amendment right to procedural due process in defending against Charnota's negligence claim. The Fourteenth Amendment prohibits government deprivation of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.[3] See also *Gregory v.*

---

[3] Although S&S Towing makes a passing reference to the Georgia Constitution in its brief on appeal, it did not argue below that OCGA § 51-2-7 violates the due process provision of the Georgia Constitution. See Ga. Const. of 1983, Art. I, Sec. I, Par. I. To the extent S&S Towing now seeks to raise this issue for the first time on appeal, it failed to preserve this claim for appellate review. See *Gliemmo v. Cousineau*, 287 Ga. 7, 16 (1) (694 SE2d 75) (2010)

*Sexual Offender Registration Review Bd.*, 298 Ga. 675, 685 (2) (784 SE2d 392) (2016) ("[P]rocedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment." (citation and punctuation omitted)). These principles "extend to every proceeding[, whether] judicial or administrative or executive in its nature[,] at which a party may be deprived of life, liberty, or property." *Barker*, 271 Ga. at 37 (2) (citation and punctuation omitted). The Due Process Clause does not guarantee a particular form or method of procedure. See *Coppedge v. Coppedge*, 298 Ga. 494, 500 (4) (783 SE2d 94) (2016) ("the requirements of due process are flexible and call for such procedural protections as the particular situation demands") (citation and punctuation omitted)). Instead, due process "is satisfied if a party has reasonable notice and opportunity to be heard, and to present

("This court will never pass upon the constitutionality of an act of the General Assembly unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed on by the trial judge." (citation and punctuation omitted)).

its claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it." *Barker*, 271 Ga. at 37 (2) (citation and punctuation omitted).

In a civil tort case between private parties,[4] a presumption that "authorizes a fact-finder to find the existence of a fact from proof of one or more other facts is not invalid per se." *Barker*, 271 Ga. at 37

---

[4] In support of its argument, S&S Towing relies heavily on authority analyzing statutory presumptions in criminal or child custody cases. See *Stanley v. Illinois*, 405 U.S. 645 (92 SCt 1208, 31 LE2d 551) (1972) (irrebuttable presumption that unwed fathers are unfit to receive custody of their children upon the death of the mother is unconstitutional deprivation of a parent's interest in the care, custody, companionship, and management of their children); *Leary v. United States*, 395 U.S. 6 (89 SCt 1532, 23 LE2d 57) (1969) (statutory presumption that possession of marijuana is sufficient evidence of knowingly transporting illegally imported marijuana is unconstitutional); *Tot v. United States*, 319 U.S. 463 (63 SCt 1241, 87 LE 1519) (1943) (statutory presumption that possession of a firearm by a person previously convicted of a violent crime is conclusive proof that the person received the firearm through interstate commerce after the effective date of the statute proscribing the offense violated defendants' procedural due process rights under U.S. Constitution). This reliance is misplaced in the context of this civil tort action, which does not involve a criminal defendant's liberty interest or a parent's fundamental right to the care and custody of his or her children. See *Weinberger v. Salfi*, 422 U.S. 749, 785 (III) (95 SCt 2457, 45 LE2d 522) (1975) (distinguishing procedural due process cases in upholding duration of marriage requirement under social security act because "[u]nlike criminal prosecutions, or the custody proceedings at issue in *Stanley v. Illinois*, such programs do not involve affirmative Government action which seriously curtails important liberties cognizable under the Constitution").

(3). A rebuttable presumption that has "a rational connection between what is proved and what is to be inferred does not constitute a denial of due process." Id. at 37 (3). In contrast, "a presumption which cannot be rebutted by any amount of uncontradicted evidence or which precludes any opportunity for the production of contrary evidence is inconsistent with the principles of due process." Id. But see *Flint River Mills v. Henry*, 239 Ga. 347, 349-50 (236 SE2d 583) (1977) (distinguishing United States Supreme Court cases addressing statutory presumptions, including *Vlandis v. Kline*, 412 U.S. 441 (93 SCt 2230, 37 LE2d 63) (1973) (statutory definition of "resident" for purposes of setting tuition invalid where students not granted opportunity to show factors clearly bearing on issue of residency), because each case was decided on its particular facts and holding that workers' compensation statute's conclusive presumption that minor, unmarried step-children are the dependents of a deceased worker was constitutional).

2. Turning to the merits, S&S Towing argues that the second

sentence of OCGA § 51-2-7 creates an irrebuttable statutory presumption in violation of procedural due process, so we begin our analysis by examining the structure and statutory history of OCGA § 51-2-7 to determine what effect the second sentence has on the claim and defenses under the statute. The first sentence of OCGA § 51-2-7 has existed in various forms since 1863. See Ga. Code of 1863, § 2907; Code 1868, § 2913; Code 1873, § 2964; Code 1882, § 2964; Civil Code 1895, § 3821; Civil Code 1910, § 4417; Code 1933, § 105-110; Ga. L. 1985, p. 1033, § 1. As we have explained, the statute "is but a restatement of the common law, and at common law in order to support such actions it was necessary to show, not only that the animal was vicious or dangerous, but also that the owner knew this fact. The scienter was the gist of the action." *Harvey v. Buchanan*, 121 Ga. 384, 385 (49 SE 281) (1904). See also *Steagald v. Eason*, 300 Ga. 717, 719 (797 SE2d 838) (2017) ("Even when it is shown that a dog is, in fact, vicious or dangerous, proof that its owner or keeper knows of the peculiar propensities that render the dog in question vicious or dangerous is an essential element of a lawsuit under

OCGA § 51-2-7."); *Conway v. Grant*, 88 Ga. 40, 41 (13 SE 803) (1891) ("The ferocious character of the dogs and the knowledge of the owner are sufficiently alleged."). In 1985, the General Assembly amended the statute by adding the second sentence: "In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance . . . and the said animal was at the time of the occurrence not at heel or on a leash."[5] Relying on *Johnston v. Warendh*, 252 Ga. App. 674 (556 SE2d 867) (2001), and similar cases, S&S Towing argues that the amendment is a conclusive presumption in violation of due process because it "creates liability based upon a violation of a local or county ordinance and requires no proof of scienter." Id. at 676 (1). We disagree.

Starting with the text of the statute, we observe that although neither the first nor the second sentence of OCGA § 51-2-7 speaks of

---

[5] In the same legislation, the General Assembly also amended the statute by changing "shall be liable" to "may be liable" in the first sentence. See *Eshleman v. Key*, 297 Ga. 364, 368 (2), n.3 (774 SE2d 96) (2015), overruled in part on other grounds, *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016).

the owner's knowledge of the animal's vicious or dangerous nature, we have nevertheless concluded that scienter was carried over from the common law as an essential element of a claim under OCGA § 51-2-7. *Sinclair v. Friedlander*, 197 Ga. 797, 800 (30 SE2d 398) (1944) (knowledge of owner required "although the Code section [is] silent as to the necessity of its being shown"). See also *Steagald*, 300 Ga. at 719; *Harvey*, 121 Ga. at 385. In *Steagald*, we explained that at common law, it was presumed that "dogs, regardless of breed, are 'of a harmless species,'" and for that reason, courts required proof of the dog's vicious or dangerous nature *and* proof of the owner's knowledge of that vicious or dangerous nature. Id. at 719 (citation omitted). Notably, *Steagald* only involved the first sentence of the statute, as the parties there conceded that the incident did not involve the violation of a local leash law. See id. at 718, n.2.

Based on the statutory text and history, it appears that, when a local jurisdiction passes an ordinance requiring that owners restrain their animals and it is shown that the animal at issue was unrestrained at the time of the incident, the second sentence of

OCGA § 51-2-7 displaces the common law presumption that a dog is a harmless species and instead defines such unrestrained animals as "vicious." However, the second sentence by its text does not displace the requirement in the common law, which our courts have read into the statute's first sentence, that a plaintiff seeking to recover under OCGA § 51-2-7 must also prove that the owner had knowledge of the vicious or dangerous propensity of the animal. Therefore, reading the two sentences together, and consistent with our case law construing the statute, in situations where a plaintiff has shown that a local ordinance required the animal to be restrained and the animal was not restrained at the time of the incident, a plaintiff seeking to recover under OCGA § 51-2-7 must still prove scienter and can do so in two ways: by showing that the owner had knowledge of the animal's vicious propensity as defined by the common law *or* by showing that the owner knew that the animal was unrestrained at the time of the injury.[6] In addition to

[6] Accordingly, we hereby disapprove any Court of Appeals cases to the extent they hold that the owner's knowledge of the animal's vicious propensity

scienter, a plaintiff seeking to recover under OCGA § 51-2-7 must also show that the owner carelessly managed or allowed the animal to go at liberty; the animal caused the injury; and the injured party did not provoke the injury by his own act.

3. This case presents the first opportunity for us to squarely consider whether the second sentence of OCGA § 51-2-7 violates procedural due process, and we now conclude that it does not. As we construe it, the second sentence simply creates an additional way to prove viciousness. Although the common law presumed that a dog is

---

is immaterial when the animal is running at large in violation of a local ordinance, including, but not limited to, the following: *Cowan v. Carillo,* 331 Ga. App. 387, 389-90 (1) (a) (771 SE2d 86) (2015) (evidence that defendants were in violation of a local leash law relieved plaintiffs from having to show that the owners had knowledge of the dog's vicious propensity); *Stennette v. Miller,* 316 Ga. App. 425, 427 (1) (729 SE2d 559) (2012) ("Unless there is evidence that the animal was not at heel or on a leash as required by local ordinance at the time of the incident, a plaintiff in a dog bite case under OCGA § 51-2-7 must show that the owner had knowledge that the dog had the propensity to commit the act that caused the injury." (citation and punctuation omitted)); *Huff v. Dyer*, 297 Ga. App. 761, 763 (1), n.5 (678 SE2d 206) (2009) (contrasting facts in that case with cases holding that owner's knowledge of an animal's propensity to bite is immaterial if the animal was running at large in violation of a local ordinance); *Johnston*, 252 Ga. App. at 676 (1) (statute creates liability without proof of scienter); *Oertel v. Chi Psi Fraternity*, 239 Ga. App. 147, 150 (2) (521 SE2d 71) (1999) ("If an animal is running at large in violation of a local ordinance when it bites someone, the owner's knowledge of its propensity to bite is immaterial.").

a harmless species, the second sentence provides that showing that an animal was running at large in violation of a local ordinance at the time of the incident meets the requirement of proving its vicious nature. Thus, the second sentence is definitional and, at most, creates a rebuttable presumption because the owner can produce evidence that he or she did not have knowledge of the animal's vicious nature or that the owner did not know that the animal was unrestrained at the time of the injury (if the jurisdiction required that the animal be restrained), and the plaintiff must also prove the other elements of a claim under OCGA § 51-2-7, which together satisfy the due process requirement of an opportunity to be heard. See *Barker*, 271 Ga. at 39 (3) (workers' compensation statute defining "catastrophic injury" as one that would qualify the claimant to receive social security disability benefits was definitional and, at most, provided for a rebuttable presumption that the claimant suffered a catastrophic injury). We also conclude that it is significant for procedural due process purposes that the second sentence was enacted in 1985, providing S&S Towing constructive notice of the

presumption since that time. See id. at 37 (2) (due process requires notice and opportunity to be heard).

Moreover, to the extent that the second sentence can be considered a rebuttable presumption, a rational basis exists to allow local jurisdictions to determine based on the local conditions whether certain animals need to be restrained and for the General Assembly to modify the common law and define a "vicious" animal as one that is not restrained according to the will of the local governmental body. See *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731, 736 (2) (b) (691 SE2d 218) (2010) (legislature has authority to modify or abrogate the common law but may not abrogate "*constitutional* rights that may inhere in common law causes of action") (emphasis in original); *Georgia Lions Eye Bank, Inc. v. Lavant*, 255 Ga. 60, 61 (2) (335 SE2d 127) (1985) ("A person has no property, no vested interest, in any rule of the common law.") (punctuation omitted; quoting *Munn v. Illinois*, 94 U.S. 113, 134 (24 LE 77) (1877)). We recognize that the legislature's definition of "vicious" in the second sentence of OCGA § 51-2-7

departs from the common understanding of the term and as parsed out in the common law, but the legislature could rationally conclude that for this statutory tort, it would be a better use of resources to limit the need to litigate over whether the animal is "vicious" where there is a local ordinance requiring restraint and the animal is running at large. See *Weinberger v. Salfi*, 422 U.S. 749, 785 (III) (95 SCt 2457, 45 LE2d 522) (1975) ("There is thus no basis for our requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce.").

Accordingly, S&S Towing's procedural due process challenge to OCGA § 51-2-7 fails, and we conclude that the trial court did not err in rejecting S&S Towing's constitutional due process challenge and in denying its motion in limine to exclude Charnota from producing any evidence or making any argument based on the second sentence

of OCGA § 51-2-7. We, thus, affirm and remand this case for further proceedings consistent with this opinion.[7]

*Judgment affirmed and case remanded with direction. All the Justices concur.*

DECIDED JUNE 16, 2020.
OCGA § 51-2-7; constitutional question. Paulding Superior Court. Before Judge Beavers.
*Mason B. Rountree*, for appellant.
*Jack E. Clay, Robert W. Starrett*, for appellee.

---

[7] We express no opinion on the merits of either Charnota's claim under OCGA § 51-2-7 or S&S Towing's defenses to that claim.