**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 9, 2023**

# In the Court of Appeals of Georgia

A22A1653. ESPINOZA v. MOREL et al.

LAND, Judge.

Socorro Espinoza sued Juan Morel and Rosa Ramirez (collectively, "defendants") for injuries she sustained when she was attacked by defendants' dog, Teddy. At the time of the attack, Espinoza was in the defendants' backyard giving Teddy water while he was tethered to a large dog house. Finding that there was no evidence showing that defendants had knowledge that Teddy had a propensity to bite or attack, the trial court granted summary judgment in favor of the defendants. Espinoza appeals from that order. For the following reasons, we reverse.

Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

*Kolmichuk v. Bruno's, Inc.*, 230 Ga. App. 638, 639 (497 SE2d 10) (1998). A defendant may meet this burden "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a genuine jury issue on at least one essential element of [the] plaintiff's case." (Citation and punctuation omitted.) Id. We review de novo a trial court's grant of summary judgment. *Walker v. Gwinnett Hosp. Sys., Inc.*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003).

The relevant facts are not in dispute. The evidence shows that the defendants asked Espinoza to check on Teddy, their German Shepherd, while they were out of town over a weekend in April 2017. The defendants left the dog tethered to a large dog house in the partially fenced-in back yard, with the tether attached to the dog house at a single point. This method of restraint violated a local ordinance, as explained below. Espinoza had successfully fed the dog earlier in the day without incident. When she came back in the afternoon, the dog lunged at her and bit her on the head and foot. Espinoza went to the hospital as a result of her injuries. After the attack, Teddy remained attached to the tether in the backyard.

Espinoza testified that she had been around the dog "many times" before and had never seen the dog bite or act aggressively. The defendants testified that Teddy

had never attacked anyone prior to the incident or acted aggressively towards others. The defendants' three adult children lived at home at the time of the incident, and they each testified that Teddy had never bitten anyone or acted aggressively towards others prior to the incident.

Espinoza sued the defendants, seeking damages for the injuries she suffered in the attack. Espinoza then moved for partial summary judgment, seeking a ruling that Teddy was a "vicious animal" under OCGA § 51-2-7 because he was not properly restrained as required by local county ordinances. The trial court granted the motion in part, finding that plaintiff established that the defendants violated a Gwinnett County animal control ordinance concerning the proper tethering of animals. Espinoza filed a second motion for summary judgment. In denying Espinoza's second motion for summary judgment, the trial court held that an issue of material fact existed as to whether defendants had knowledge that Teddy had a "propensity for viciousness."

The defendants then moved for summary judgment. The trial court granted the motion because the defendants "pointed to an absence of evidence on file to give rise to an issue of fact concerning [their] knowledge that Teddy had a propensity to bite

or attack people or other animals" and because Espinoza had failed to point to any evidence to the contrary. Espinoza appeals from that order.

In her sole enumeration of error, Espinoza argues that the trial court erred by granting the defendants' motion for summary judgment because there was evidence in the record that the defendants had knowledge of Teddy's vicious propensity. Based on the statutory definition of vicious propensity, we agree.

Espinoza's negligence claim rests on OCGA § 51-2-7, which provides:

> A person who owns or keeps a vicious animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. *In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and that said animal was at the time of the occurrence not at heel or on a leash. . . .*

(Emphasis supplied).

In *S&S Towing & Recovery, Ltd. v. Charnota*, 309 Ga. 117, 122 (3) (844 SE2d 730) (2020), our Supreme Court held that the General Assembly's addition of the second sentence of OCGA § 51-2-7 in 1985 provides plaintiffs with "an additional way to prove viciousness." "[W]hen a local jurisdiction passes an ordinance requiring

4

that owners restrain their animals and it is shown that the animal at issue was unrestrained at the time of the incident, the second sentence of OCGA § 51-2-7 displaces the common law presumption that a dog is a harmless species and instead defines such unrestrained animals as 'vicious.'" Id. at 121-122. In upholding the constitutionality of OCGA § 51-2-7, our Supreme Court held that "a rational basis exists to allow local jurisdictions to determine based on the local conditions whether certain animals need to be restrained and for the General Assembly to modify the common law and define a 'vicious' animal as one that is not restrained according to the will of the local governmental body." Id. at 123.

Espinoza argues that Teddy should be considered a "vicious or dangerous animal," as contemplated by OCGA § 51-2-7, because the defendants were in violation of Gwinnett County Animal Control Ordinance No. AC-2015-001 at the time of the incident. In other words, Teddy was "not restrained according to the will of the local governmental body" as expressed in the controlling ordinance. We agree.

Section 10-29 of that Ordinance, titled "Restraint," provides the following:

(a) It shall be unlawful for any owner or possessor of any dog to fail to keep the dog under restraint or control as provided in this section.

(b) A dog is considered not under restraint or control when it is running at large. . .[1] Reasonable care and precautions shall be taken to prevent the dog from leaving the real property limits of its owner. . . , and to ensure that:

(1) It is securely and humanely enclosed within a house, building, fence, pen or other enclosure of which it cannot climb. . . and that such enclosure is securely locked at any time the animal is left unattended; or

(2) It is securely and humanely restrained by an invisible containment system. . . ; or

(3) It is on a leash and under the control of a competent person, or it is off leash and obedient to and under voice command of a competent person . . . any time it is not restrained as provided for in subsection (1) or (2) above while on the owner's property.

Section 10-29 (c) further provides that it "shall be unlawful to tether an animal outdoors, except when the following conditions" are met: that is, the owner or an "adult custodian" must be outside and supervising the animal at all times; a trolley

---

[1] Section 10-1 of the ordinance defines "Dogs running at-large" as "any dog not under immediate control, not on a leash, not at heel, not beside a competent person, not in a vehicle driven or parked, or not confined within the property limits of the owner."

system is the only approved form of tether and a single-point tether is prohibited; and the "animal must have free access to food, water, and shelter."

Here, there is evidence that the defendants violated Section 10-29 (b) of the Ordinance because they did not take reasonable care and precautions to ensure that Teddy was "securely and humanely enclosed within a house, building, fence, pen or other enclosure," restrained by an invisible containment system, or on a leash or at heel under control of a competent person. Instead, the owners chose to unlawfully tether Teddy on a single-line tether while unsupervised in violation of Section 10-29 (c) of the Ordinance. While this single-line tether may have successfully kept Teddy in his yard, it was not an authorized or lawful method of restraining him under the Ordinance. Since Teddy was not restrained in accordance with the requirements of the Ordinance, the dog is deemed to have a "vicious propensity" under the second sentence of OCGA § 51-2-7, and the plaintiffs had no burden to show that Teddy had actually shown any prior tendency to bite or attack. See *Tutak v. Fairley*, 198 Ga. App. 307, 308 (401 SE2d 73) (1991) (reversing summary judgment for dog owners where dog was not restrained in accordance with local ordinance at time of attack and stating "[a]lthough the animal may have been physically within the boundaries of the appellees' property at the time, it was clearly not 'confined' there" as required by the

7

ordinance). Compare *Stennette v. Miller*, 316 Ga. App. 425, 427 (1) (a) (729 SE2d 559) (2012) (defendant was not required to comply with Cobb County animal control ordinance requiring proper restraint of animals when such ordinance did not apply to animals kept inside the owner's home or fully-fenced enclosure, as defendants' dogs were at the time of the incident).

However, this does not end our inquiry. Our Supreme Court reiterated that the second sentence of OCGA § 51-2-7 "does not displace the requirement in the common law, which the courts have read into the statute's first sentence, that a plaintiff seeking to recover under OCGA § 51-2-7 must also prove that the owner had knowledge of the vicious or dangerous propensity of the animal." *S&S Towing & Recovery, Ltd.*, 309 Ga. at 121 (2).[2] The statute's second sentence did not create an "irrebutable statutory presumption that an owner of a dog is aware of the dog's vicious propensity" in every instance where an owner is in violation of a government ordinance requiring their animal to be at heel or on a leash. Rather, a plaintiff seeking

[2] See also *Steagald v. Eason*, 300 Ga. 717, 719 (797 SE2d 838) (2017) ("Even when it is shown that a dog is, in fact, vicious or dangerous, proof that its owner or keeper knows of the peculiar propensities that render the dog in question vicious or dangerous is an essential element of a lawsuit under OCGA § 51-2-7"); *Sinclair v. Friedlander*, 197 Ga. 797, 800 (30 SE2d 398) (1944) (knowledge of owner required "although the Code section [is] silent as to the necessity of its being shown").

8

to recover under the second sentence of OCGA § 51-2-7 must prove both that the owner violated an applicable ordinance requiring the animal to be at heel or on a leash *and* that "the owner had knowledge of the vicious . . . propensity of the animal." *S&S Towing & Recovery, Ltd.*, 309 Ga. at 122 (2).[3] The Court went on to explain that this scienter requirement can be proved in two ways: by showing that the owner either knew that the animal had a vicious propensity as it is defined in common law or by showing that the owner knew the animal was held in conditions that did not comply with applicable government ordinance requiring the animal to be at heel or on leash. Id. at 122 (2). In addition to this scienter requirement, a plaintiff "seeking to recover under OCGA § 51-2-7 must also show that the owner carelessly managed or allowed the animal to go at liberty; the animal caused the injury; and the injured party did not provoke the injury by his own act." *S&S Towing & Recovery, Ltd.*, 309 Ga. at 122 (2).

Here, contrary to the trial court's summary judgment ruling, Espinoza was not required to show that the owners had knowledge of Teddy's vicious propensity as that

_____

[3] See *S&S Towing & Recovery, Ltd.*, 309 Ga. at 123 (3) ("We recognize that the legislature's definition of 'vicious' in the second sentence of OCGA § 51-2-7 departs from the common understanding of the term and as parsed out in the common law, but the legislature could rationally conclude that for this statutory tort, it would be a better use of resources to limit the need to litigate over whether the animal is 'vicious' when there is a local ordinance requiring restraint").

term is defined by the common law (i.e., a history showing a tendency to bite or attack). Rather, Espinoza could prove scienter by showing that the owners were aware of the manner in which Teddy was restrained and by showing that such manner of restraint violated an applicable government leash ordinance. Espinoza has done this by pointing to direct testimony from both defendants that they knew that they left Teddy alone for a long weekend, they knew he was tethered to a single-point line, and they knew that their back yard was not fully fenced-in. As described above, this method of restraining Teddy was in violation of Gwinnett County Animal Control Ordinance No. AC-2014-001, § 10-29 (a)-(c).

Because the trial court erred by holding that Espinoza was required to prove that the defendants had knowledge of Teddy's vicious propensity as that term is defined by the common law and failed to take into consideration their knowledge of the unlawful manner in which Teddy was restrained, we reverse the grant of summary judgment.

*Judgment reversed. McFadden, P. J., and Gobeil, J., concur.*