**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 16, 2024**

# In the Court of Appeals of Georgia

A24A0758. HARRIS et al. v. MARTIN.

HODGES, Judge.

Marilyn Martin sued James Charles Harris, Dontavius Martin,[1] and Erick Bacon, alleging that they failed to keep a dog properly restrained and asserting that the three men were liable under OCGA § 51-2-7 for injuries she sustained when the dog attacked her as she was walking past the house where the dog lived. At trial, the court denied a motion for directed verdict, and, ultimately, a jury found all three men liable. The jury returned a $66,000 verdict in Marilyn's favor and apportioned five percent

---

[1] The parties point us to nothing in the record indicating whether Marilyn Martin and Dontavius Martin are related. Because of these identical last names, to avoid confusion, we will refer to all parties by their first names.

fault each to James and Erick,[2] and ninety percent to Dontavious. Following the entry of judgment, Dontavious and James moved for judgment notwithstanding the verdict ("JNOV") or, alternatively, a new trial. The trial court denied the motion, and, after a hearing, awarded attorney fees to Marilyn pursuant to OCGA § 9-11-68, to be paid only by Dontavious.

Dontavious and James appealed, raising 10 enumerations of error. They challenge the trial court's denial of their motions for directed verdict, JNOV, and new trial, and argue that the trial court also erred in refusing to give a requested jury instruction. Additionally, Dontavious contends that the trial court erred in granting attorney fees against him pursuant to OCGA § 9-11-68, alleging that Marilyn's offer of settlement was invalid. For the reasons that follow, we reverse.

> When reviewing a trial court's denial of a motion for JNOV or new trial, this Court determines if there is any evidence to support the jury's verdict. If a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the

---

[2] Liability against Erick was found by default; Erick is not a party in the instant appeal.

verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motions for new trial and JNOV will not be disturbed.

(Citations and punctuation omitted.) *Potts v. Clowdis*, 360 Ga. App. 581 (859 SE2d 875) (2021); *Old Republic Nat. Title Ins. Co. v. RM Kids*, 352 Ga. App. 314 (835 SE2d 21) (2019) (citing same standard for denial of motion for directed verdict); see also OCGA § 9-11-50. "However, questions of law are reviewed de novo." (Citation and punctuation omitted.) *Georgia Trails and Rentals v. Rogers*, 359 Ga. App. 207, 215 (3) (855 SE2d 103) (2021).

As an initial matter, we note that this case is rife with conflicting evidence which, of course, we construe to uphold the verdict. *Potts*, 360 Ga. App. at 581. So viewed, the record shows that Dontavious owned the dog at issue, a pitbull named Nino. Nino lived in a house that James and Dontavious own on Wood Hill Lane in East Point. James, who was 82 at the time of trial, had not lived in the home for 18 years. Dontavious traveled frequently, but lived in the house with the dog when he was in Atlanta. Erick, a construction worker, stayed overnight at the house on and off when he was making repairs and renovations there.

The record shows that on July 10, 2018, the day of the attack, Marilyn was walking through her neighborhood.[3] She had walked through the neighborhood for years, and for some months had seen a dog in the fenced backyard of the Wood Hill house, which was along her route. The dog barked and ran along a "raggedy" chain-link fence whenever he saw passersby, and was known to jump against the fence "like a predator on prey" in an "attempt to get at the adults or children present." Travis Burton, a neighbor who is also a police officer, testified that Nino was so aggressive even inside the fence that he had called 911 to report the dog's behavior, and that when his children played outdoors, he sat on his porch with a gun in hand because he was afraid of the dog getting loose. He testified that, prior to the attack at issue here, the dog had gotten loose and he had called police to report this. Dontavious also testified that the dog had gotten loose prior to the incident.

On the day at issue here, Nino was loose again. Marilyn was out walking and saw Nino, unleashed, on the lawn of the house across the street. Marilyn, who is in her 70s, carried a two-foot, "flimsy" metal rod when she walked, using it for exercise and also in case she had any problems or concerns. When she saw Nino, she "stood still

---

[3] Marilyn testified by deposition, which was read on her behalf in court because of her medical condition.

and tried to back up quietly[,]" but Nino lunged at her and she dropped the rod. Nino "attacked" her, resulting in five or six bleeding puncture wounds, ultimately leaving a scar on her chest. She testified that the dog bit her chest and injured her arm. She screamed for help, and neighbors came running.

Burton ran outside to find Marilyn lying on the ground, bleeding. He tore off his shirt and used it to put pressure on the wounds. He also saw a person he described as one of the residents of the house carrying a dog inside. Shortly afterward, Nino ran out again, "charging aggressively" toward them. Burton placed himself between Marilyn and the dog, but when the dog was 10 or 15 feet away, the person who lived at the house again grabbed Nino and struggled to get him back in the house.

Erick was installing a faucet at the house when the attack occurred. He was alone with the dog.[4] He testified via a deposition read into the record on his behalf that when Nino saw Marilyn walk by, the dog "jumped up" and hit the door latch with his "hand," or paw. As Dontavious testified, "a child can open that door." He also testified, "everybody seen the door. It's a latch that you just push down and it opens up. . . . If [Nino] would have jumped up and he's leaning on the door, . . . that's going

---

[4] Dontavious was in California when the attack occurred, and James had not been at the house for approximately 30 days.

to open[.]"[5] Erick went outside when he heard Marilyn scream; he saw Nino running and "she was screaming because she [saw] the dog coming." Erick testified that Nino jumped up and hit Marilyn in the chest with both paws, scratching her. After the attack, Erick "threw Nino in the house" and tried to help Marilyn, who was eventually taken by ambulance to the hospital.

Marilyn sued under OCGA § 51-2-7, which in pertinent part provides:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.

As is evident from the wording of the statute, in order to successfully show liability in a dog bite case, a plaintiff must prove, among other things, that a defendant or defendants "own" or "keep" the dog, that they have carelessly managed or

---

[5] As noted above, Nino had previously gotten loose, once by digging out under his fence. There is no evidence regarding how he escaped on other occasions, and no evidence that he had ever previously gotten out through the front door.

allowed the dog to go at liberty, that the dog has vicious or dangerous propensities and, pertinent to this appeal, that the owner or keeper of the dog knew of its vicious or dangerous propensities. *Sutton v. Sutton*, 145 Ga. App. 22, 25 (1) (243 SE2d 310) (1978). We have held that the type of behavior allowing a jury to make such a finding "does not mean an incident involving the exact same conduct and the exact same injury must actually occur before the owner's knowledge may be inferred, as long as there is an incident or incidents which would put a prudent [person] on notice to anticipate the event which occurred." (Citation and punctuation omitted.) *Torrance v. Brennan*, 209 Ga. App. 65, 67 (2) (432 SE2d 658) (1993).

1. James and Dontavious argue that the trial court erred because no evidence shows they were on notice regarding Nino's vicious or dangerous propensities. We must agree.

Pretermitting whether there was any evidence to support the other elements outlined in OCGA § 51-2-7, even under the liberal "any evidence" standard, see *Potts*, 360 Ga. App. at 581; *Old Republic*, 352 Ga. App. at 314, the record is devoid of evidence that James and Dontavious knew of Nino's vicious or dangerous

propensities, specifically, Nino's propensity to bite and to jump on or lunge at people, causing them to fall.

> Our law does not presume that dogs are vicious or dangerous. To the contrary, it presumes that dogs, regardless of breed, are of a harmless species, and for that reason, our courts require actual proof of the dangerous nature of a particular dog and of his owner's knowledge of the particular dog's deviation from presumptive harmlessness. Even when it is shown that a dog is, in fact, vicious or dangerous, proof that its owner or keeper knows of the peculiar propensities that render the dog in question vicious or dangerous is an essential element of a lawsuit under OCGA § 51-2-7.

(Citations and punctuation omitted.) *Steagald v. Eason*, 300 Ga. 717, 719 (797 SE2d 838) (2017). Again, this notice does not require that the owner or keeper know of an identical incident in which the dog previously attacked someone in the same way as occurred in the attack at issue. See *Raith v. Blanchard*, 271 Ga. App. 723, 724 (1) (611 SE2d 75) (2005) ("Although this traditionally has been described as Georgia's 'first bite rule,' the rule does not literally require a first bite. Instead, the true test of liability is the owner's superior knowledge of his dog's temperament.") (citation and punctuation omitted). However, there must be evidence both of the dog's propensity "to do the act that caused the injury," and of the owner's or keeper's knowledge of

that propensity. *Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 459-460 (1) (540 SE2d 671) (2000) (affirming grant of summary judgment to defendant even though keeper knew guard dog had previously escaped from enclosure, and that dog barked, growled, and chased near fence, this was insufficient to show keeper knew dog had propensity to bite); see *Dilfield v. Bealing*, 357 Ga. App. 279, 282-283 (1) (850 SE2d 469) (2020) (reversing grant of summary judgment to plaintiffs and finding that even though owners put dog in crate when visitors came and knew dog jumped and barked when people passed the house, this did not amount to knowledge of dangerous propensity where owners had no knowledge that dog had previously bitten anyone). Further, it is well settled that a dog's barking and growling, without more, will not put an owner on notice of the dog's propensity to attack or bite people. See *Custer v. Coward*, 293 Ga. App. 316, 318, 319 (1) (667 SE2d 135) (2008) (finding that dog's growling, as a result of a leg condition owner knew about and that caused dog pain, was insufficient to show owner knew dog had propensity to bite where record contained no evidence that dog had previously bitten or attempted to attack anyone); *Wade*, 246 Ga. App. at 460 (1) .

In the present case, no evidence was presented that James and Dontavious knew of prior incidents where Nino had attacked, knocked down, or bitten anyone. Dontavious testified that the dog was "not vicious" and indeed was "too friendly." He averred that he knew of no prior incidents where Nino had bitten or injured anyone, and both James and Dontavious testified no one had ever told them the dog was vicious. Erick testified that the dog had not bitten or tried to bite anyone before, and had not previously injured anyone. Although Burton had called the police about Nino, he testified that he had never spoken to the dog's owners or keepers about the dog's behavior.

While it is clear that the jury did not believe the testimony of James, Dontavious, and Erick, the record contains no evidence, either direct or circumstantial, showing that the men knew of Nino's propensity to attack Marilyn in

the way that he did.[6] We are bound by the any evidence standard and must find that the trial court erred as a matter of law.

2. Dontavious also argues that the trial court erred in granting attorney fees to Marilyn under the offer of judgment statute, OCGA § 9-11-68. Pretermitting whether Dontavious's arguments have merit, his contentions are now moot as attorney fees are available under the applicable portion of this statute only if "the plaintiff recovers a final judgment in an amount greater than 125 percent of such offer of settlement[.]" OCGA § 9-11-68 (b) (2). Because of our determination in Division 1, there is no longer

---

[6] We note Marilyn's argument that Nino was loose in violation of the Fulton County leash ordinance, which, although not admitted into evidence, was nonetheless read to the jury during jury instructions without objection. However, even were we to find that the leash law had somehow been admitted into evidence — an issue which we do not reach — there is still an absence of the evidence needed to uphold the trial court's decisions. Our Supreme Court is clear on this point in the context of leash ordinances, finding: "In situations where a plaintiff has shown that a local ordinance required the animal to be restrained and the animal was not restrained at the time of the incident, a plaintiff seeking to recover under OCGA § 51-2-7 *must still prove scienter* and can do so in two ways: by showing that the owner had knowledge of the animal's vicious propensity as defined by the common law or by showing that the owner knew that the animal was unrestrained at the time of the injury." (Footnote omitted; emphasis supplied.) *S&S Towing & Recovery v. Charnota*, 309 Ga. 117, 122 (2) (844 SE2d 730) (2020). There is no evidence, as outlined herein, that the men knew of Nino's vicious propensities within the parameters of our law; nor — given that Dontavious was in California and James was not at the house when the attack occurred — is there evidence showing they knew Nino was unrestrained "at the time of the injury." Id.

a judgment amount greater than 125 percent of the offer of settlement, and the award of attorney fees must also be reversed.

3. Finally, and again because of our determination in Division 1, we need not address James and Dontavious's remaining enumerations of error.

*Judgment reversed. Doyle, P. J., and Watkins, J., concur.*